Louis M. Greenblott, J.
The motion is to dismiss the plaintiff’s complaint pursuant to CPLR 3211 (subd. [a], par. 7), upon the ground that it does not state facts sufficient to constitute a cause of action. The action is for the recovery of real estate commissions. Upon such a motion, only the complaint is before the court. The merits of the action.cannot be passed upon and speculation may not be indulged as to what the proof may show on the trial. The allegations of the complaint must be taken at face value and every intendment and fair inference must be in favor of the pleading. (Dyer v. Broadway Cent. Bank, 252 N. Y. 430; Madole v. Gavin, 215 App. Div. 299.)
The complaint alleged that the plaintiff is the sole legatee and devisee of the estate of Wesley J. Barrow, who died October 15, 1961. She further avers that the decedent was a duly licensed real estate salesman employed by the defendant, a duly licensed real estate broker of the State of New York. It is further alleged that the decedent and the defendant agreed that the compensation due to decedent for his services on behalf of the defendant would be 50% of the gross commissions received by defendant for sales, leases or other property dispositions effected by decedent in his capacity as a licensed real estate salesman under the defendant.
Prior to the first day of May, 1961, the decedent in the course of his employment negotiated and effected a lease of certain real property situate in the Town of Union, Broome County, New York, between his customer, Graydon R. Bone and Happy Time Park, Inc. On or about May 1, 1961, a written lease was entered into between Bone and Happy Time Park, Inc., providing for the rental of this property and granting unto Happy Time Park, Inc., an option to purchase the property.
It is further alleged that for his services and on or about May 1,1961, Graydon R. Bone agreed to pay decedent and defendant, his employer 10% of the gross rentals received by him under the terms of the lease and if the option to purchase was exercised, Bone agreed to pay 10% of the sales price less any commissions paid on account of the rentals received. The plaintiff further alleges that prior to May 1, 1963, the option to purchase the real estate from Bone was exercised by the assignees of Happy Time Park, Inc., Robert D. Tabirs and *359 Barbara Tabirs, who paid $18,000 therefor. Finally, it is alleged that the decedent and his estate is entitled to the sum. of $942.81 as a result of this sale.
It is the contention of the defendant, in support of his motion to dismiss, that the decedent had not lawfully earned his share of the commission at the time of his death, October 15, 1961, and therefore his estate cannot recover.
The allegations of the complaint must be deemed true for the purposes of this motion. Inasmuch as the decedent and the defendant entered into an agreement under which the decedent was to receive 50% of the gross commissions for sales effected by him, and inasmuch as the decedent negotiated and effected the lease together with the option to purchase, the defendant’s rights under the option agreement accrued to him through the energies of the decedent. The decedent therefore became entitled to 50% of the commissions received by the defendant in connection with the sale of the property, at the time the lease agreement was signed.
An option denotes an offer that is irrevocable on the part of the offeror and therefore is a contract as far as he is concerned. (Restatement, Contracts, § 24.) It is therefore the decision of this court that the rights of the decedent as well as the rights of the defendant as against G-raydon R. Bone, accrued at the time the lease was executed by Bone and Happy Time Park, Inc. The proof of the decedent’s right to recover is the fact that the defendant became entitled and did receive commissions from Bone when the option was exercised.
Defendant contends that sections 442 and 442-a of the Real Property Law preclude recovery by the plaintiff.
•Section 442 of the Real Property Law provides as follows: “No real estate broker shall pay any part of a fee, commission or other compensation received by the broker to any person for any service, help or aid rendered in any place in which this article is applicable, by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate, unless .such a person be a duly licensed real estate salesman regularly employed by such broker or a duly licensed real estate broker or a person regularly engaged in the real estate brokerage business in a state outside of New York.”
Section 442-a of the Real Property Law provides as follows: “No real estate salesman in any place in which this article is applicable shall receive or demand compensation of any kind from any person, other than a duly licensed real estate broker regularly employing the salesman, for any service rendered or work done by such salesman in the appraising, buying, selling, *360 exchanging, leasing, renting, or negotiating of a loan upon any real estate.”
In 1929 (1929 Atty. Gen. 135), the Attorney-General was posed this problem: “ The Secretary of State asks whether, in my opinion, a person who has been licensed as a real estate salesman in the employ of a licensed real estate broker may lawfully be paid moneys, on account of commissions received by the broker after the salesman has left his service and has taken up employment with another broker, such moneys accruing on account of transactions fully negotiated by the salesman, or negotiated but not consummated by him, while he was in the service of his former employer”. (Emphasis supplied.)
After quoting from sections 442 and 442-a of the Real Property Law, the opinion states: ‘ ‘ Taken literally, these provisions might seem to prohibit the payment to a salesman of commissions lawfully earned by him, if, subsequent to his earning the same and prior to the receipt by his employer of the moneys, he should change his employment. But the statute has no such intent. Its purpose was not to prevent a licensed broker or salesman from receiving compensation lawfully due him, but to prevent persons not entitled to act as brokers or salesmen from deriving profit from the pretense that they were such. Holding that ‘ we must give to the statute a reasonable and fair construction, ’ the Court of Appeals, construing section 442, said in Holding Co. v. Reis, 240 N. Y. 424, 427 (reversing 212 App. Div. 263): ‘ This section was intended to strengthen the general provision that after October 1, 1922, no one should act as a real estate broker without a license. Unlicensed persons were not to be allowed to shield themselves from its penalties by using the name of a qualified broker and then demanding a part of the commissions earned. ’ It is my opinion that commissions lawfully earned by a duly licensed salesman do not cease to be payable to him by reason of a change in his employment before he has received the same.” (Emphasis supplied.)
The court, in Clair v. Kall & Kall (23 Misc 2d 568, 571) made this comment on the Attorney-General’s opinion: “It will be noted that although the question posed speaks in terms of transactions, ‘ fully negotiated by the salesman or negotiated but not consummated by him (the salesman) while he was in the service of his former employer’ the opinion of the Attorney-General answers the latter portion of the question obliquely, stating only that such a salesman may be paid ‘ commissions lawfully earned,’ and not paid ‘ by reason of a change in his employment before he has received the same.’ (Emphasis supplied.) *361 The opinion does hold quite clearly, however, that the termination alone of the salesman’s employment would not prohibit payment of commissions, if earned.”
In our view, the commissions due to the decedent were earned by him prior to his death despite the fact that they were not received until the option was exercised.
The defendant’s motion is therefore dismissed, without costs to either party.