Bernard Tomson, J.
It is surprising that despite the large volume of real estate transactions in which the licensed real estate salesman is employed, his status and the incidents of his employment are discussed in only three New York reported opinions: Meyers v. Suffrin (203 N. Y. S. 103); Julian Studley, Inc. v. Geisinger (12 Misc 2d 527, affd. 7 A D 2d 844); and Opinions of the Attorney-General (1929, p. 135). In this action, where a licensed real estate salesman sues for commission on a transaction completed after the termination of his employment, only Opinions of the Attorney-General (1929, p. 135) bears on the problem here presented.
The plaintiff was employed by the defendant, as a licensed real estate salesman in September of 1958. He testified that he was “ to get 50 per cent of the commissions * * * when the title of the house or parcel was closed and they received their commission, I get mine ”. In response to the question, “ Was it required that sales be made through your efforts? ”, the plaintiff’s answer was, “ That’s right.” In October, the plaintiff interested a prospective purchaser in some property. It may fairly be said that had these negotiations come to fruition prior to January 19,1959 (the date the plaintiff left the employ of the defendant), he would undoubtedly be entitled to his share of the commission received by his employer, the defendant. Both parties agree, however, that in January of 1959, the prospective purchaser wras interested in another parcel, that ‘ ‘ the deal was dead”, that this purchaser’s interest was spontaneously revived in February, resulting in further negotiations, and that it was not until March that the p'arties agreed to the terms of the contract which was then signed. Title passed on May 28, 1959, at which time the defendant received a broker’s commission, one half of which constitutes the sum for which the plaintiff sues.
The defendant urges two propositions to defeat the plaintiff’s claim:
*570 1. He argues that section 442 and section 442-a of the Real Property Law do not permit, under any circumstances, the payment of a commission by a real estate broker to his salesman after the date of termination of the employment relationship.
2. He further argues that since the negotiations did not ripen into a sale prior to the date of the termination of the plaintiff’s employment, the plaintiff may not recover.
Preliminarily, it should be pointed out .that there is raised no issue here of bad faith in the termination of the plaintiff’s employment.
Section 442 of the Real Property Law, reads in part: “ No real estate broker shall pay any part of a fee, commission or other compensation received by the broker to any person for any service, help or aid rendered in any place in which this article is applicable, by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate, unless such a person be a duly licensed real estate salesman regularly employed by such broker or a duly licensed real estate broker or a person regularly engaged in the real estate brokerage business in a state outside of New York”. Section 442-a of the Real Property Law provides: “ No real estate salesman in any place in which this article is applicable shall receive or demand compensation of any kind from any person, other than a duly licensed real estate broker regularly employing the salesman, for any service rendered or work done by such salesman in the appraising, buying, selling, exchanging, leasing, renting or negotiating of a loan upon any real estate.”
In 1929 (1929 A tty. G-en. 135) the Attorney-General was posed this problem: “ The Secretary of State asks whether, in my opinion, a person who has been licensed as a real estate salesman in the employ of a licensed real estate broker may lawfully be paid moneys, on account of commissions received by the broker after the salesman has left his service and has taken up employment with another broker, such moneys accruing on account of transactions fully negotiated by the salesman, or negotiated but not consummated by him, while he was in the service of his former employer”. (Emphasis supplied.)
After quoting from sections 442 and 442-a of the Real Property Law, the opinion states:11 Taken literally, these provisions might seem to prohibit the payment to a salesman of commissions lawfully earned by him, if, subsequent to his earning the same and prior to the receipt by his employer of the moneys, he should change' his employment. But the statute has no such intent. Its purpose was not to prevent a licensed broker or *571 salesman from receiving compensation lawfully due him, hut to prevent persons not entitled to act as brokers or salesmen from deriving profit from the pretense that they were such. Holding that 6 we must give to the statute a reasonable and fair construction the Court of Appeals, construing section 442, said in Holding Co. v. Reis, 240 N. Y. 424, 427 (reversing 212 App. Div. 263): ‘ This section was intended to strengthen the general provision that after October 1, 1922, no one should act ás a real estate broker without a license. Unlicensed persons were not to be allowed to shield themselves from its penalties by using the name of a qualified broker and then demanding a part of the commissions earned. ’ It is my opinion that commissions lawfully earned by a duly licensed salesman do not cease to be payable to him by reason of a change in his employment before he has received the same.” (Emphasis supplied.)
It will be noted that although the question posed speaks in terms of transactions, “ fully negotiated by the salesman or negotiated but not consummated by him (the salesman) while he was in the service of his former employer ” the opinion of the Attorney-General answers the latter portion of the question obliquely, stating only that such a salesman may be paid “ commissions lawfully earned,” and not paid “ by reason of a change in his employment before he has received the same.’’ (Emphasis supplied.) The opinion does hold quite clearly, however, that the termination alone of the salesman’s employment would not prohibit payment of commissions, if earned.
Were the plaintiff’s commissions “ earned ” prior to January 19, 1959? To answer that question in any way other than in the negative would be to disregard the employment contract and the duties imposed upon the salesman. Not only was the plaintiff required to participate in the negotiations and apparently help effect a sale through his efforts but his compensation was to await the time when “ title of the house or parcel was closed ”. Even if the receipt of the commission by his employer was to be considered a condition of payment only, not affecting the “ earning ” of the commission, the fact is that negotiations were not in progress when he left the defendant’s employ, at which time the “ deal was dead ”, that new negotiations were not instituted until February (and not through the plaintiff’s agency) and that the eventual terms of sale were not agreed on until March (in the plaintiff’s absence) — all these circumstances would require a determination in favor of the defendant.
If the cases discussing the law applicable to real estate brokers were considered analogous, the plaintiff would be no better off. He did not accomplish the object of his agency during the term *572 of his employment (Levy v. Hayman, 8 A D 2d 854 [2d Dept.]; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; Slawson & Hobbs v. Rafter, 76 Misc. 199); he did not procure a buyer ready, able and willing to perform according to the terms offered by the owner (Gilder v. Davis, 137 N. Y. 504; Globus Realty Corp. v. Fleetwood Terrace, 275 App. Div. 34, affd. 301 N. Y. 783; Rubin v. Collins, 214 App. Div. 161; Hubbard v. Tobin, 15 Misc 2d 65); he was not the procuring cause of the eventual sale since the negotiations conducted while he was employed by the defendant appeared futile at the time, even though the sale was substantially consummated (Ettinghoff v. Horowitz, 115 App. Div. 571; Gardner v. Pierce, 131 App. Div. 605; Popper v. Korn, 218 App. Div. 513; Freedman v. Epstein, 151 N. Y. S. 988; Muldoon v. Silvestre, 283 App. Div. 886; and, see, 9 A. L. R. 1194; see, also, Donovan v. Weed, 182 N. Y. 43; Sparks v. Grassi, 165 N. Y. S. 519; Finck v. Menke, 33 Misc. 769; 26 A. L. R. 784; 160 A. L. R. 1048.)
Judgment for defendant, with costs and disbursements.