138 N.J. Super. 588 (1976)
351 A.2d 791
MICHAEL V.C. FLOYD, PLAINTIFF-RESPONDENT,
v.
MORRISTOWN EUROPEAN MOTORS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1975.
Decided January 26, 1976.
*589 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Edward J. Gilhooly argued the cause for appellant (Messrs. Yauch, Peterpaul & Clark, attorneys).
Mr. Pieter J. de Jong argued the cause for plaintiff-respondent.
*590 The opinion of the court was delivered by FRITZ, P.J.A.D.
Defendant, an automobile dealer appeals from a judgment in a nonjury trial favoring plaintiff, a salesman formerly in its employ, with a verdict of $721.25 for commissions from the sale of three automobiles.
For the most part the facts are not in dispute. The only area of real factual disagreement, having to do with the nature of plaintiff's extended leave and of his employment when he returned, was the subject of specific factual findings by the trial judge. These findings could easily have been reached on credible evidence in the record considering the proofs as a whole. Recognizing as well the opportunity the judge had to see and hear the witnesses and evaluate their credibility, we will not disturb these findings. State v. Johnson, 42 N.J. 146 (1964).
Thus viewed, the testimony conduced to conclusions of fact as follow. Plaintiff was employed by defendant as a salesman of foreign automobiles. The verbal contract of employment provided for a weekly draw of $100 against commissions, use of an automobile and "twenty-five percent of the net profit" (as testified to by plaintiff) or "a commission of twenty-five percent" (as testified to by the "owner" of the corporate defendant). Clearly, both witnesses had reference to a 25% commission on the net profit from plaintiff's sales, but neither testified to any agreement with respect to when the commission became earned or vested.[1]
Between January 8, 1974 and February 13, 1974 plaintiff "sold" the three automobiles in question. Each of these transactions was sufficiently alike so that the detailing of one *591 would here serve the purposes of all three. At the time of the sale the new model automobiles were not in stock and, in fact, the price was not even yet known. Accordingly, while formal purchase orders were signed and substantial (a little less than 10% of the purchase price) deposits were required, the deposits were said on the orders to be "refundable." The fact of the matter is that none of the deposits had to be refunded; in each case the purchaser paid for and accepted delivery of the car he (or she) ordered.
But in the meantime, and before delivery of the cars, plaintiff, on March 8, 1974, after about one year's service, went on a self-proclaimed "vacation." The trial judge reasonably found this to have been within the "expectation" of the employer. (The employer testified to a vacation policy of "one week pay vacation" after a year's employment, but had to speculate how much plaintiff would have been paid for a vacation, not only because plaintiff was not a salaried employee but because there was no agreement and no precedent: "[I]t never came to a point where a salesman stays more than a year.") Plaintiff overstayed somewhat the anticipated duration of his leave. Plaintiff and defendant agreed that further employment occurred on plaintiff's return, but that plaintiff no longer had the use of an automobile. The trial judge found, also reasonably, that plaintiff "did not leave the employment" and that there was "never any indication that he was fired or that he had voluntarily left the employment."
However, the cars concerned in the purchase orders here in question had been delivered to defendant during plaintiff's absence. Despite the fact that all three purchasers accepted and paid for the automobiles they had ordered from plaintiff, defendant refused to pay plaintiff his commission because plaintiff "hadn't been there to deliver the cars," or, as defendant testified through its "owner," "At the time we collected the money, demonstrate or show the car, registered and turn over to the customer, [plaintiff] was not employed by Morristown European Motors." It would appear that despite *592 the clause making the deposit refundable, little more was required from defendant in plaintiff's absence than is embraced in the foregoing statement which, it is to be observed, commences with the collection of the money.
Defendant here argues that plaintiff was required to procure an "enforceable" sales order before a commission was earned. Not only was this point not argued with such precision before the trial judge, but it may fairly be said that it was not even raised. In such circumstances we ordinarily will not pass upon matters not raised or considered below. Woll v. Dugas, 112 N.J. Super. 366 (App. Div. 1970). To the extent that consideration of this issue may be inherent in the issues which were raised below, however, or which are essential to "bringing about an impartial and expeditious determination of the essential merits of the issues," issues thus suggested will be resolved here despite defendant's overreaching. In re Schmidt, 46 N.J. Super. 369, 375-376 (App. Div. 1957).
The underlying issue in this case is at what point an automobile salesman's right to his commission vests when the employment contract is silent in this regard. We have been cited to no previous dispositive decision in this State nor have we found any.
Considerations of equity and justice cause us to reject defendant's suggestion that the absence of the salesman from the scene at the time of "consummation" of the sale should, of itself, preclude his commission. In Heuvelman v. Triplett Elec. Instrument Co., 23 Ill. App.2d 231, 161 N.E.2d 875 (App. Ct. 1959), that which is said to be "the general rule recognized in this and other jurisdictions" not only does not require the presence of the salesman, but protects his commission "notwithstanding the fact that the sale was consummated by the principal personally or through another agent," so long as the salesman is the "procuring cause of [the] sale." 23 Ill. App. 2d at 237, 161 N.E.2d at 878.
We share this view that the matter should be decided by a determination of whether the salesman seeking the *593 commission was, in fact, the effective cause of accomplishing the sale. Restatement, Agency 2d, § 448 at 355 (1958). If, factually, a salesman effectively produces a sale which ultimately occurs, then he should be paid his commission, and this irrespective of whether the written memorandum or order, if any, was "enforceable" or whether he was in fact present when the delivery took place. Cf. Bayer v. Oxford University Press, Inc., 270 App. Div. 586, 61 N.Y.S.2d 209 (App. Div. 1946), aff'd 296 N.Y. 780, 71 N.E.2d 215 (Ct. App. 1947); Weick v. Rickenbaugh Cadillac Co., 134 Colo. 283, 303 P.2d 685 (Sup. Ct. 1956). We believe, as did the court in Flaherty v. Bookhultz, 207 Or. 462, 297 P.2d 856 (Sup. Ct. 1956), in a concededly different factual situation, that the salesman's duties here "were at an end * * * when he procured an order that ripened into a completed sale; his commission was then earned, although payment thereof was deferred." 207 Or. at 482, 297 P.2d at 862.
Johnson v. McKinney, 90 Ohio App. 111, 103 N.E.2d 825 (Ct. App. 1950), cited by defendant, is distinguishable if for no other reason than in that matter none of the orders taken by plaintiff (with a nominal deposit) was in fact executed. To the extent that that case holds, as it would appear, that regardless of other factors entering into the picture, a salesman may not assure himself a commission on any sale until after he has first delivered to his principal an "enforceable" order for an automobile, we believe the guidelines thus drawn are entirely too narrow. We are of the opinion that such a rule, by ignoring the commercial realities of the situation, may exalt technicalities and sacrifice justice. To the extent that Vulcan Materials Co. v. Douglas, 131 Ga. App. 21, 205 S.E.2d 84 (Ct. App. 1974), is contrary to our holding, we disagree with its holding, at least in cases where the order procured by the salesman is in fact ultimately executed.
It is apparent here, as is implicit if not express in the findings of the trial judge, that plaintiff was in fact the *594 effective cause of the sales of the three cars in question. He should not be deprived of his commissions.
In a final point defendant argues that the trial judge erred in finding that plaintiff's leaving did not terminate his employment. For reasons which appear above, we believe the fact to be irrelevant in this case with respect to the question of plaintiff's right to commissions. In any event, as we have already noted, the trial judge's finding that plaintiff "did not leave the employment" could reasonably have been reached on sufficient credible evidence in the whole record. There is no error. State v. Johnson, supra.
In his brief before us, plaintiff's counsel seeks "counsel fees and cost." R. 2:11-4 and 5, cited by counsel, do not include, in their express limitation of the instances in which counsel fees may be here allowed, counsel fees in a matter such as that before us here. Accordingly, that application is denied. Plaintiff has here prevailed and shall be allowed his taxed costs. R. 2:11-5.
Affirmed.
NOTES
[1] There was some testimony by defendant relating to the "unwritten law in the automobile business" mandating a "split" of "the deal" between two salesmen who are jointly involved, but the trial judge  correctly we believe  not only found inadequate evidence of "splitting commissions" but concluded that "if this was a policy [plaintiff] should have been advised of it." This implicit rejection here of proof of custom, said to relate to the vesting of commissions on automobile sales, was sound.