OPINION OF THE COURT
Ira B. Harkavy, J.
When is a licensed salesperson in the employ of a broker entitled to a share of a commission? Can a licensed salesperson benefit from a broker’s windfall where the broker earns a commission on a deal arranged by the salesperson which is consummated after the salesperson leaves the broker’s employ? Whether a licensed salesperson employed by a real estate broker must actually be in the employ of the broker at the time a deal is consummated in order to be entitled to the salesperson’s share of the brokerage commission is a question that has never been precisely answered.
Plaintiff Carol Parisi brings this action against her former employer, a real estate broker, David Swift, for a commission earned when she allegedly brought together a ready and willing buyer and seller. Defendant alleges, inter alia, that the subject real estate transaction was abandoned and not revived until subsequent to the departure of the plaintiff from defendant’s employ, and that, therefore, plaintiff is not entitled to a commission.
On direct examination plaintiff testified that she was a licensed salesperson employed by David Swift during the period December, 1980 through May, 1981, and that her agreement with him provided she was to receive 40% of the sum collected by the broker if she was the salesperson who consummated the sale. In February of 1981, as part of her usual duties, plaintiff was canvassing an apartment build *788 ing located at 400 East 56th Street in Manhattan which was in the process of co-opertizing. During these random calls she spoke with a resident, Erwin Katz. Katz indicated an interest in selling his apartment if he were able to purchase a larger one in the same building. Subsequently, plaintiff contacted another resident of the same building, Martin Schwartz. Schwartz expressed an interest in selling his apartment, 28-N, an apartment which met Katz’ specifications. Plaintiff relayed the potential availability of the Schwartz apartment to Katz. On March 7, 1981, plaintiff obtained a binder signed solely by Katz. The binder (plaintiff’s exhibit 1 — defendant’s exhibit A) set forth the consideration payable as follows: $42,500 on signing contract; $200,000 by securing bank financing; $182,500, the balance, in cash, at closing. The binder also specified that the deal was subject to “Purchaser arranging the above financing within 45 days — closing to take place not sooner than February 15, 1982 — possession to be delivered within 90 days of contract”. The binder also set forth that David A. Swift brought about the sale and was entitled to a commission equal to 6% of the purchase price. Schwartz was ambivalent about the deal citing family problems and never signed the binder. By April the transaction appeared to have died a natural death and plaintiff abandoned her efforts to consummate the transaction.
On or about May 19,1981, defendant received a call from Schwartz. Schwartz stated that he and Katz had arrived at an understanding concerning the terms of the sale and that he had agreed to sell the apartment to Katz. Schwartz volunteered that he was notifying Swift of the deal because he thought he might be under some legal obligation to do so, since Swift and Parisi had brought the parties together and participated in the negotiations. Swift signed a brokerage agreement in which Swift agreed to accept a commission of $16,000, which was paid. Plaintiff testified that she found out about the brokerage agreement from one of her clients and left Swift’s employ on May 20,1981, when Swift refused to pay her the salesperson’s share of the commission. Plaintiff contends that she is entitled to a commission of $6,400 (40% of the $16,000) since she was the procuring cause of the sale and that if the broker is entitled to a *789 commission, then it follows that she is entitled to her 40% of the commission.
Defendant’s position can be summarized as such: (1) plaintiff left defendant’s employ prior to the consummation of the deal, and therefore is not entitled to a salesperson’s commission (he claims that she left in the beginning of May, 1981); (2) the binder that plaintiff alleges to have secured was never signed by the seller; and (3) plaintiff did not participate in the negotiations for the actual sale at $450,000.
The first issue for the court to address is if plaintiff left defendant’s employ prior to May 20, 1981, the date of the contract of sale, whether that factor would preclude her from collecting a salesperson’s commission. The existing case law stops short of answering this question precisely — but strongly suggests that it would not. Clair v Kall & Kall (23 Misc 2d 568) involved a licensed salesman who was denied a commission because he left the employ of a broker prior to the consummation of the deal. The question in Clair was, did the salesman earn his commission — i.e., did he cause a meeting of the minds? The court answered this in the negative finding that the eventual terms of sale were not agreed upon until several months after the salesman left the broker’s employ. The court’s finding, however, was based upon a factual as opposed to a legal determination. The court took pains to state that sections 442 and 442-a of the Real Property Law were not intended to preclude licensed salespersons from earning a commission, even though the deal was consummated after the salesman became disassociated with the broker. The holding in Clair strongly suggests that a change in employment status would not be a critical factor. The deciding issue therein was whether the salesman earned his commission. The court answered this in the negative finding that the eventual terms of sale were not agreed upon until several months after the salesman and broker parted ways. It should be noted that in Clair there was a time lapse of several months between the salesman’s departure and the consummation of the transaction. Therefore, the time factor is a crucial element in making a determination.
*790 In Bendevena v Fuchs Real Estate (89 Misc 2d 466), which also involved a salesperson no longer employed by a broker, the court found that the claimant salesperson did secure a ready, willing and able purchaser for the property. In that case a signed binder was obtained, the contract of sale was executed and title passed from the seller to the buyer in accordance with the terms negotiated by the salesperson. Defendant distinguishes the instant case from Bendevena on two grounds: firstly, that in the instant case a signed binder was never obtained; secondly, that the plaintiff herein did not participate in the negotiations that actually evolved into the contract for sale, and that, in fact, a wholly new deal sprung into existence after the first deal ceased.
The court disagrees with this reasoning. The defendant first became aware of the revival of the transaction because the seller, on his own initiative contacted defendant to advise him of it. The seller had had as frequent dealings with plaintiff as he did with defendant, if not more. Defendant fortuitously obtained a commission and it would not serve the interests of justice for defendant to reap full benefits of his good luck without sharing the reward with the person who was instrumental in bringing the deal together. A careful reading of the existing case law indicates that there is no clear prohibition against a licensed salesperson being entitled to a commission after she has left a broker’s employ. The issue at hand is whether plaintiff, in common-law jargon, caused a meeting of the minds. Plaintiff was instrumental in arranging the introduction of the buyer and seller. Plaintiff had negotiated á deal for $425,000 but testified that the $450,000 figure had been discussed during the negotiations in which she participated. Regardless, the disparity between the two figures is negligible. The ultimate terms of financing were somewhat different than those set forth in plaintiff’s binder, but there was testimony that Schwartz’ initial ambivalence over the sale was due to personal problems as opposed to dissatisfaction with the financing. Once Schwartz had resolved his problems he was quite willing to sell to the buyer that plaintiff had introduced him to.
The court also notes that defendant testified that he never surrendered plaintiff’s salesperson license once she *791 left his employ as required by section 442-b of the Real Property Law. It is arguable, therefore, that plaintiff was still employed by defendant at the time of the execution of the contract of sale and until the time the license is actually surrendered or transferred.
The court finds that plaintiff fully performed her required services as a salesperson and is entitled to her share of the commission. Accordingly, judgment for plaintiff in the sum of $6,400 plus interest from May 20, 1981.