**Wilfred J. WAKEFIELD,**
Plaintiff-Appellee,

v.

**NORTHERN TELECOM, INC.,**
Defendant-Appellant.

Nos. 919, 1026, Dockets
85–3013, 85–7135.

United States Court of Appeals,
Second Circuit.

Argued March 29, 1985.

Decided Aug. 5, 1985.

Bradley Brewer, New York City (Brewer & Soeiro, New York City, of counsel), for defendant-appellant.

David J. Mahoney, Jr., New York City (B.F. Flaherty, Healey & McCaffrey, New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, OAKES and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This is an action by a salesman against his former employer for damages arising out of the termination of the employment relationship. A jury awarded the plaintiff, Wilfred Wakefield, $111,079.87 on a breach of contract claim. Northern Telecom, Inc. ("NTI"), the employer, appeals. We reverse the damage award and remand for a new trial. We further dismiss Wakefield's age discrimination claim with prejudice.

## FACTS

Wakefield began working as a salesman for Danray, Inc. in 1975, selling Danray's telephone switching systems. In 1978, commissions on sales of Danray equipment were governed by a "Sales Incentive Plan" that stated it would be in effect from January 1, 1978 to December 31, 1978.

In January, 1978, NTI, which is a wholly owned subsidiary of Northern Telecom Ltd., and sells switching systems similar to Danray's, acquired Danray. On October 26, 1979, Danray discharged 57 employees, one of which was Wakefield. The parties dispute the events leading up to the termination of Wakefield's employment, but those disputes do not affect the legal issues raised on this appeal.

Following his termination, Wakefield, who was 50 years old, filed age discrimination complaints with the New Jersey Civil Rights Division and with the EEOC and then brought the present action alleging age discrimination. An amended complaint added claims for wrongful termination of employment, unjust enrichment, breach of contract, and quasi-contract. On the sixth day of the eight-day trial, Wakefield withdrew the age discrimination claim. Later he also withdrew the unjust enrichment and quasi-contract claims, and Judge Sand dismissed the wrongful discharge claim. Only the contract claim went to the jury, which returned a verdict for Wakefield.

After the district court entered judgment for Wakefield, NTI moved for judgment n.o.v., for a new trial, and for an order dismissing the claims that had been withdrawn or dismissed. The district court de-

nied the motions for judgment n.o.v. and a new trial. It did not rule on the remaining motions. NTI notified the district court that it did not believe the judgment was final and appealable because it did not dispose of all of Wakefield's claims; nevertheless, NTI filed a notice of appeal. The parties by stipulation withdrew the appeal without prejudice, while NTI submitted a proposed supplemental judgment to the district court. The district court first denied NTI's motions to dismiss, but later entered an amended judgment dismissing the unjust enrichment, quasi-contract, and wrongful termination claims with prejudice, but dismissing the age discrimination claim without prejudice.

NTI, faced with an administrative proceeding in New Jersey arising out of an age discrimination claim filed there by Wakefield, applied to this court for a writ of mandamus ordering Judge Sand to dismiss the age discrimination claim in the instant case with prejudice. On February 20, 1985, a panel of this court denied NTI's petition but expedited this appeal.

### DISCUSSION

NTI raises several claims of error, which we treat seriatim.

The district court applied New Jersey law to Wakefield's breach of contract claim. NTI argues that this was error, and that the district court should have applied the substantive law of New York. We need not decide this issue, because New Jersey and New York contract law do not differ so far as the legal issues before us are concerned.

Wakefield's claim is that NTI breached its contract to pay him commissions on sales of switching equipment by dismissing him after he had performed services that assured a number of sales in the future. The parties agree that the NTI commission plan constituted a binding contract, although they dispute the precise terms of the plan in effect at the pertinent times. NTI claims the relevant contract is the 1978 Danray Sales Incentive Plan, which

NTI adopted after the takeover. Paragraph J of the Plan provided that

> In order to receive incentive compensation under this Plan, the participant must be a Danray employee on the date the incentive compensation is to be paid pursuant to the Plan. It will be Danray's policy to ensure a fair, equitable and prompt payment of any incentive due an employee whose employment is terminated or who is transferred to a non-sales position.

NTI argues that this provision on its face defeats Wakefield's claim for commissions because Wakefield was not an NTI employee at the time the commissions in question became payable.

Wakefield responds to this argument in two ways. First, he claims that documents circulated at NTI in 1979 constituted a new agreement wholly superseding the 1978 Danray Plan. These documents contain no provision similar to Paragraph J, and Wakefield therefore argues that there was no requirement that he be an NTI employee when the commissions became payable, so long as he had procured the sale. Under this theory, his termination is irrelevant, because he had earned his commissions in October, 1979, and was entitled to them whether or not he remained an employee.

NTI argued that the documents circulated in 1979 did not supersede the Danray Plan as a whole but merely altered certain provisions of the Plan. Provisions of the Danray Plan not expressly mentioned, such as Paragraph J, NTI argues, remained in force throughout 1979.

The dispute as to the continuing effectiveness of Paragraph J was not submitted to the jury by the district court, however, because it believed that the doctrine of substantial performance overrode the effect of Paragraph J. For reasons discussed *infra*, we believe this was error.

Wakefield offers a second legal theory that would, if legally and factually supported, permit recovery whether or not Paragraph J was in effect at the pertinent time. That theory is that NTI fired him

precisely in order to avoid paying him commissions on sales that were completed but for formalities. A termination so motivated, he argues, violates an implied covenant of good faith and fair dealing.

NTI responds to Wakefield's second theory by arguing that Wakefield was an at-will employee, terminable by NTI for any reason at any time. It notes that the New York Court of Appeals has squarely held that the implied covenant of good faith does not give rise to a contract action for the wrongful discharge of an at-will employee under New York law, *Murphy v. American Home Products, Inc.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983), since the contrary result would be wholly inconsistent with the very nature of the contract. "[I]t would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination." *Id.* New Jersey law leads to the same result. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72–73, 417 A.2d 505, 512 (1980).[1]

Wakefield may not, therefore, recover for his termination *per se*. However, the contract for payment of commissions creates rights distinct from the employment relation, and, whether or not Paragraph J is still effective, obligations derived from the covenant of good faith implicit in the commission contract may survive the termination of the employment relationship.

■ Implied contractual obligations may coexist with express provisions which seemingly negate them where common expectations or the relationship of the parties as structured by the contract so dictate. *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984) (publisher must make good faith initial promotional efforts notwithstanding contract clause vesting in it the sole determination as to number of volumes printed and amount of advertising expenditures). A covenant of good faith should not be implied as a modification of an employer's right to terminate an at-will employee because even a whimsical termination does not deprive the employee of benefits expected in return for the employee's performance. This is so because performance and the distribution of benefits occur simultaneously, and neither party is left high and dry by the termination. Where, however, a covenant of good faith is necessary to enable one party to receive the benefits promised for performance, it is implied by the law as necessary to effectuate the intent of the parties. Thus, in *Zilg*, an obligation on the publisher's part to make a good faith initial effort to promote a book was implied from the contractual structure in which the author gave the publisher exclusive rights to publish it. *See also Onderdonk v. Presbyterian Homes*, 85 N.J. 171, 425 A.2d 1057 (1981).

■ In the present case, even if Paragraph J is still in effect, we believe it cannot be read to enable the defendant to terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed. Such an interpretation would make the performance by one party the cause of the other party's non-performance. *See Association Group Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 293 A.2d 382 (1972) (per curiam). Commission agreements are customarily used in circumstances in which agents or employees cannot be directly supervised and their performance cannot be effectively monitored or measured apart from concrete results. In such circumstances, an unfettered right to avoid payment of earned commissions in the principal or em-

---

1. After the briefing and argument of this appeal, the Supreme Court of New Jersey decided *Woolley v. Hoffman-La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985). That case held that a company employment manual that purported to enhance job security might create an enforceable obligation to discharge employees only for cause. The decision did not create new employment rights independent of such a manual or other contractual arrangement. Since we do enforce an obligation of good faith derived from the commissions contract, our decision is consistent with *Woolley*.

ployer creates incentives counterproductive to the purpose of the contract itself in that the better the performance by the employee, the greater the temptation to terminate.

Implying this obligation into the contract by no means deprives Paragraph J (assuming it to be in effect) of meaning. Employees who leave NTI voluntarily or who are terminated for reasons other than a desire to avoid payment of earned commissions, including reasons which are mistaken or arbitrary, have no right to further commissions. Thus, if NTI demonstrates that Wakefield's discharge was part of a legitimate reduction in force or motivated by dissatisfaction with him, justified or not, Paragraph J, if effective, would operate to bar payment of commissions to Wakefield.

We conclude, therefore, that a properly instructed jury could have awarded damages to Wakefield upon either of the theories described above. However, the dispute as to the continued efficacy of Paragraph J was not submitted to the jury, and the jury charge on NTI's implied obligation of good faith was erroneous.

The dispute over the continued efficacy of Paragraph J was not submitted to the jury because the district court believed it unnecessary in light of the common-law doctrine of substantial performance. Under this doctrine, "if one party's performance is a constructive condition of the other party's duty, only 'substantial' performance is required of the first party before he can recover under the contract." Farnsworth, *Contracts* § 8.12, at 590 (1982). The court therefore instructed the jury that if Wakefield showed that he had "substantially performed all that he was required to do under the contract," but that his discharge prevented him from completing his performance, he might recover the unpaid commissions. In so doing, the district court ignored the fact that, if Paragraph J

were in effect, Wakefield's continued employment was not a constructive condition of NTI's payment of commissions but an express condition. As Farnsworth also notes, "[i]f the occurrence of a condition is required by the agreement of the parties, rather than as a matter of law, a rule of strict compliance traditionally applies." *Id.* § 8.3, at 544.

The New York and New Jersey cases cited by the district court are not to the contrary.[2] They stand for the proposition that when a contract calling for the payment of commissions to an employee contains no express provision detailing when the right to commissions vests, the courts will look to the employee's efforts and the custom in the industry. This much is unsurprising, because the law of agency generally awards commissions to an agent who was the "procuring cause" of a sale. *Greene v. Hellman*, 51 N.Y.2d 197, 433 N.Y.S.2d 75, 412 N.E.2d 1301 (1980). The parties remain free, however, to alter those rules by contract, *see DeBenedictis v. Gerechoff*, 134 N.J.Super. 238, 244, 339 A.2d 225, 228 (1975) ("the determinative factor is the agreement" in employee's suit for commissions), and they may create a commission agreement that differs from the traditional seller-broker relationship. Paragraph J would be such an alteration of the traditional relationship, and the dispute over its continued efficacy should have been submitted to the jury. If the jury found that Paragraph J had been eliminated, then the cases described above would govern. If the jury found Paragraph J to be in effect, however, Wakefield would have to resort to the implied obligation of good faith.

■ We conclude that the district court's charge on NTI's implied obligation of good faith was also erroneous. The heart of

---

**2.** *Floyd v. Morristown European Motors, Inc.,* 138 N.J.Super. 588, 351 A.2d 791 (1976) (parties had no agreement with respect to when commission became earned); *DeBenedictis v. Gerechoff,* 134 N.J.Super. 238, 339 A.2d 225 (1975) (remanding for fact-finding where, *inter alia,* defendant alleged that agreement provided that

plaintiff would receive a commission only if in defendant's employ upon completion of sale); *Bendevena v. Richard Fuchs Real Estate, Inc.,* 89 Misc.2d 466, 391 N.Y.S.2d 939 (1976) (applying agency law to real estate sales); *Parisi v. Swift,* 121 Misc.2d 787, 468 N.Y.S.2d 841 (Civil Ct. 1983) (same).

that instruction was that Wakefield had to prove

> that NTI did not act in good faith, but terminated him for reasons which were known or should have been known to be invalid, mere pretext, or resulted from a delegation of authority so that the recommendation with respect to the plaintiff's discharge was entrusted to a superior who was not disinterested or objective.

At no point did the instructions limit Wakefield's recovery to a discharge motivated by a desire to avoid paying commissions otherwise owed. Rather, they imported notions of wrongful discharge into the implied obligation of good faith and thus imposed upon NTI a generalized duty not to discharge Wakefield wrongfully, a duty which does not exist under New York or New Jersey law.[3]

We thus remand for a new trial. To summarize, Wakefield may prevail in one of two ways. First, he may attempt to prove that Paragraph J of the 1978 Danray Sales Incentive Plan did not apply to some or all of the sales for which he seeks commissions, and that he substantially fulfilled the requirements of any applicable contracts to earn commissions for those sales. Second, he may attempt to prove that NTI's desire to avoid paying him commissions that were virtually certain to become vested was a substantial motivating factor in the decision to discharge him. If the discharge was otherwise motivated, he may not recover on the good faith theory.

 Finally, NTI renews its claims that Judge Sand abused his discretion in failing to dismiss Wakefield's age discrimination claim with prejudice. Whether we view the question as arising under Fed.R.Civ.P. 15 or 41(a)(2),[4] the trial court has considerable discretion in deciding whether to allow a withdrawal of a claim without prejudice. In general, the court may allow such a dismissal if the defendant will not be prejudiced thereby, *Hoffmann v. Alside, Inc.,* 596 F.2d 822, 823 (8th Cir.1979), and should consider the defendant's effort and expense in defending the action as well as the plaintiff's reasons for needing such a dismissal. *Pace v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir.1969).

In the instant case, the district court did not state its reasons for failing to dismiss with prejudice the age discrimination claim. Indeed, Wakefield appears neither to have requested such forebearance nor to have provided reasons to the district court justifying it. On appeal, Wakefield has been equally unable to explain why a claim which was tried but withdrawn before submission to the jury on the evident judgment that it had not been proved should not be dismissed with prejudice. Reasons of judicial economy alone would appear to dictate that one full and fair attempt to prove this claim is enough. Weight must also be given to the fact that NTI has had to defend this claim, and considerations of fairness require some showing as to the plaintiff's need to pursue it a second time elsewhere.

---

**3.** This error was aggravated by a charge on damages which instructed the jury to award Wakefield all the commissions he "would have earned" had he remained in NTI's employ. To the extent this language suggested that he might recover more than the commissions earned before his termination, it had to have been based upon a wrongful discharge theory rather than a breach of the agreement to pay vested commissions. However, no objection was made to this charge, and we note it only to clarify an issue which may arise on the retrial.

**4.** *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 203 F.2d 105 (2d Cir.1953) stated that Rule 41(a) may be invoked only to dismiss an entire action but not to dismiss as to only one of several defendants. That decision has been criticized and is now against the weight of authority. 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2362 at 150 (1971); 5 J. Moore & J. Lucas, J. Wicker, *Moore's Federal Practice* ¶ 41.-06–1 at .41–85—41–87 (2d ed. 1985). It is not clear that the rule laid down in *Harvey Aluminum* was necessary to the result in view of the fact that the party sought to be dismissed was an indispensable party and dismissal under Rule 41(a) might have been an abuse of discretion. We need not resolve that issue in this case, however, since it is clear that a district court may permit withdrawal of a claim under Rule 15, 5 *Moore's Federal Practice* ¶ 41.06–1 at 41–83, subject to the same standard of review as a withdrawal under Rule 41(a). *See Mechmetals Corp. v. Telex Computer Products, Inc.,* 709 F.2d 1287, 1294 (9th Cir.1983).

Although it has been held that the prospect of a second lawsuit is not in itself enough to dictate that a withdrawal be only with prejudice, *see Puerto Rico Maritime Shipping Authority v. Leith,* 668 F.2d 46, 50–51 (1st Cir.1981) (withdrawal without prejudice before trial allowed where doubt exists as to federal admiralty jurisdiction and extensive discovery will be relevant to action in local court), the withdrawal here occurred well into the trial. We therefore direct that the age discrimination claim be dismissed with prejudice.

 In the district court, NTI sought attorney's fees under *Nemeroff v. Abelson,* 704 F.2d 652 (2d Cir.1983) for defending the age discrimination claim. Judge Sand denied the application, and NTI asserts that denial as error. We disagree. NTI's brief relies entirely upon the conclusory statement that Wakefield's age discrimination claim was baseless once NTI made known its "evidence of business reasons for the discharge." Such a bald assertion is not a sufficient showing of baselessness to meet the *Nemeroff* test. Nor is the fact that the claim in question was withdrawn during trial by itself enough to show the kind of baselessness justifying an award of fees. We therefore affirm the denial of attorney's fees.

Reversed and remanded for further proceedings consistent with this opinion.

OAKES, Circuit Judge (concurring in part and dissenting in part):

I concur in the opinion and judgment except as to the direction to dismiss the age discrimination claim with prejudice. In an area plainly involving trial court discretion, turning on matters of fact, *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 71 (2d Cir.1967), surely the district court, which observed the litigation and the evidence, is in the best position to determine whether appellee was simply avoiding an adverse decision. Indeed, the district court's opinion—as well as appellee's brief—indicates that the age discrimination claim was not frivolous. Moreover, I would reject appellant's argument that this case resembles *Williams v. Ford Motor Credit Co.,* 627 F.2d 158, 160 (8th Cir.1980), where the

Eighth Circuit held that the district court abused its discretion under Rule 41(a)(2) in a case in which plaintiff moved for dismissal without prejudice after the jury verdict in his favor but before the district court decided the defendant's motion for a judgment notwithstanding the verdict. In *Williams,* the plaintiff had the ability to appeal the district court's decision on the judgment n.o.v. motion. Here, however, the trial had not finished, and we cannot review properly the merits of appellee's age discrimination claim.

It is clear that the prospect of a second trial is insufficient legal prejudice to require dismissal with prejudice. *Puerto Rico Maritime Shipping Authority v. Leith,* 668 F.2d 46, 50 (1st Cir.1981); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.05[1], at 41–62 (citing cases). While I might ask the trial court to review its ruling on remand, I think we step beyond our bounds in directing dismissal with prejudice.