**CORRESPONDENT SERVICES CORPORATION, Plaintiff–Counter–Defendant,**

v.

**FIRST EQUITIES CORPORATION OF FLORIDA, Defendant–Cross–Defendant,**

**J.V.W. Investments Ltd., Defendant-Cross-Claimant-Counter-Claimant-Cross-Defendant-Appellant,**

**J.V. Waggoner, Defendant–Cross–Claimant–Cross–Defendant–Appellant,**

**Donal Kelleher, Defendant–Cross–Defendant,**

**Suisse Security Bank and Trust, Ltd., Cross–Defendant–Appellee,**

**Docket No. 02–7744.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 4, 2003.

Decided: July 16, 2003.

Kenneth A. Caruso, Chadboume & Parke LLP (Marvin R. Lange, Jeffrey I. Wasserman, on the brief), New York, New York, for Appellants.

Andrew E. Tomback, Of Counsel, Milbank, Tweed, Hadley & McCloy (Charles W. Westland, Jonathan W. Wolfe, on the brief), New York, New York, for Cross–Defendant–Appellee.

Before: JACOBS, POOLER, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Appellants J.V.W. Investment, Ltd. ("JVW")[1] and J. Virgil Waggoner, two of the several original defendants below, appeal from an order of the United States District Court for the Southern District of New York (Sweet, *J.*), dismissing an action in the nature of interpleader brought by Correspondent Services Corporation ("CSC"). With CSC's action no longer before it, the district court declined to exercise supplemental jurisdiction over appellants' state law cross-claims against appellee Suisse Security Bank & Trust, Ltd. ("SSBT"), and therefore vacated an attachment of assets belonging to SSBT that had been entered in conjunction with these cross-claims. Although the substance of these cross-claims apparently remains viable for litigation in state court, the attachment, and especially its current priority in SSBT's ongoing liquidation proceedings, might not be restored if this federal action were to be dismissed.

The district court dismissed CSC's claims after both granting CSC's Rule 41(a)(2) motion for voluntary dismissal and determining that it lacked subject matter jurisdiction over CSC's original complaint, without considering CSC's amended complaint. We vacate the dismissal and remand to the district court for the following proceedings: first, to clarify whether jurisdiction existed under CSC's amended complaint and, if it did, whether the allegations establishing jurisdiction related back to the original complaint; and second, if the allegations sufficient to establish jurisdiction relate back to the original complaint, to consider whether the prejudice to appellants flowing from the vacating of the attachment precludes dismissal of either CSC's action under Rule 41(a)(2) or the appellants' cross-claim for lack of supplemental jurisdiction.

## BACKGROUND

While the facts of this case illustrate one of the myriad ways in which complicated investment transactions can turn sour, the question that confronts us is much less complicated: whether the district court had jurisdiction over this action, and, if so, whether it abused its discretion by allowing CSC to withdraw the action or by declining to exercise supplemental jurisdiction over the remaining claims amongst the interpleader and third-party defendants. Although the specifics of the investment scheme are neither uncontested nor necessary to resolve this case, in abbreviated form they serve the alternate purpose of introducing the relationships between the parties in this action.

### I. The Investment Scheme

In 1998, Donald Kelleher, a United Kingdom citizen, undertook for a commission to realize enormous financial returns by investing $10 million belonging to J.

1. Erroneously sued as J.V.W. Investments, Ltd.

Virgil Waggoner, a Texas businessman. A Joint Participation Agreement memorializing this investment scheme implied that the investment would achieve a 500% profit within three to five months, and that Kelleher was to receive between twenty and twenty-five percent of these profits.

Kelleher and Waggoner established JVW, an alien corporation organized under the laws of the Republic of Dominica, with Waggoner as the sole shareholder and Kelleher as the director. Through JVW, Kelleher entered into an agreement with British Trade & Commerce Bank ("BTCB"), a Dominica bank, to invest the $10 million in a CD. BTCB issued the CD to JVW, and the CD was transferred to First Equities Corp. of Florida ("First Equity"), a Florida subsidiary of BTCB, which in turn placed the unfunded CD into the custody of CSC, a company that provided custodial services for First Equity. CSC is a citizen of New York and Delaware.

Meanwhile, Kelleher, through JVW, created a bank account at SSBT, an offshore bank organized under the laws of the Bahamas, and caused Waggoner's $10 million to be deposited into this account. After several unsuccessful attempts to transfer this money from JVW's SSBT account into BTCB's SSBT account and thus to fund the CD, only approximately $7.7 million was transferred to BTCB/First Equity, leaving $2.3 million unaccounted for. Even after the CD was funded, however, CSC possessed only the physical CD document, and it never controlled any of the funds received by BTCB/First Equity.

Waggoner and Kelleher then had a disagreement, and Waggoner dissolved the Joint Participation Agreement, removed Kelleher as director of JVW, and appointed himself JVW's sole director. Waggoner received the proceeds of the $7.7 million investment when the CD matured in June 1999. Kelleher, in turn, demanded from CSC, BTCB and First Equity not merely that sum but the entire $10.6 million that a fully funded $10 million CD would have yielded upon maturity. Kelleher continued to make this demand even after First Equity determined that its transfer of the CD proceeds to Waggoner was proper.

## II. The Interpleader Action

In August 1999, still with custody of the physical CD and facing Waggoner's and Kelleher's apparently conflicting claims to it,[2] CSC commenced a statutory interpleader action under 28 U.S.C. § 1335, naming Waggoner, Kelleher, JVW, BTCB and First Equity as potential claimants. CSC's complaint made clear that it believed the stake was the CD itself, rather than proceeds from the CD.

A flurry of state-law cross-claims followed, contesting ownership of the CD, liability and responsibility for the $2.3 million loss. In one of these cross-claims, Waggoner and JVW brought a claim against Kelleher, added SSBT as a third-party defendant, and moved to attach approximately $3 million of SSBT's assets located in New York. Based upon evidence that SSBT may have forged documents to conceal its potential wrongdoing, the district court found that Waggoner and JVW were likely to succeed on the merits of their claims against SSBT, and ordered the attachment.

After some litigation and significant discovery on the merits of the various cross-

---

**2.** By this time, Waggoner's claim to the proceeds of the CD had been accepted by First Equity, and he had received those proceeds; Kelleher was the only potential claimant still making demands. Waggoner's and Kelleher's claims were still conflicting, however, in the sense that only one of them was entitled to the proceeds of the CD.

claims, SSBT went into bankruptcy. SSBT's liquidator in the Bahamas[3] then moved to dismiss CSC's interpleader action for lack of subject matter jurisdiction because the CD upon which the action was based had no value, and to vacate the attachment of SSBT's assets. Dissolving the attachment, which had been granted prior to SSBT's initiation of bankruptcy proceedings, would effect a subordination of JVW's and Waggoner's claim to the $3 million and might result in their receiving a smaller share of SSBT's total assets than they would receive if the attachment remained in place. In response to SSBT's motion, CSC initially argued that subject matter jurisdiction was proper and filed an amended complaint reasserting jurisdiction under § 1335 and also including a declaratory judgment claim, allegedly with diversity jurisdiction under 28 U.S.C. § 1332. After obtaining a release of all claims from Kelleher, however, CSC subsequently filed a notice of voluntary dismissal with the court.

The district court dismissed the action as well as all of the cross-claims. It held that it did not have subject matter jurisdiction based on the original complaint, vacated the attachment because it had no jurisdiction at the time it was granted, and held that SSBT was entitled to attorney's fees

incurred defending against the wrongful attachment. The district court then granted CSC voluntary dismissal under Fed. R.Civ.P. 41(a)(2) and declined supplemental jurisdiction over defendants' state-law cross-claims, without considering in either of these decisions the potential prejudice to JVW and Waggoner that losing their attachment of SSBT's assets would create. Furthermore, to make these decisions in the first place, the district court must have implicitly determined that it had subject matter jurisdiction over the amended complaint at least as of the time of SSBT's motions; it did not, however, articulate its basis for jurisdiction under the amended complaint, or consider whether the amended complaint related back to the original filing date to cure the jurisdictional defect inherent in CSC's original complaint.

JVW and Waggoner appealed, and SSBT, the only other party with an interest in this appeal, responded.

## DISCUSSION

### I.  Standard of Review[4]

On appeal from a dismissal for lack of subject matter jurisdiction, we review a district court's factual findings for clear error and its legal conclusions *de novo. See Luckett v. Bure*, 290 F.3d 493,

3. A Bahamanian liquidator is akin to a bankruptcy trustee in the United States, and SSBT's liquidator acted on behalf of SSBT in the litigation once SSBT declared bankruptcy.

4. We also have a duty to investigate our jurisdiction when there is any question as to its validity. *See Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 58 (2d Cir.1997). While no party objects to our jurisdiction, given the cavalier nature in which the parties have dealt with jurisdictional issues thus far, we deem it prudent to mention that appellate jurisdiction is proper. Our jurisdiction under 28 U.S.C. § 1291 is limited to final judgments. The pending motion for attorney's fees in the district court is collateral to the

merits of the underlying action and does not affect the finality of the district court's judgment or, therefore, our jurisdiction. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (adopting "a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final"). Similarly, the delayed entry of final judgment, coming after oral argument on appeal, does not divest us of jurisdiction to hear the appeal. *See Cooper v. Salomon Bros. Inc.*, 1 F.3d 82, 84, 85 (2d Cir.1993). Because the order on which the appeal was taken disposed of the merits of the action, appellate jurisdiction is proper.

496 (2d Cir.2002). A district court's voluntary dismissal of claims under Rule 41(a)(2) and its decision not to exercise supplemental jurisdiction are reviewed for abuse of discretion. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.1990) (voluntary dismissal); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994) (supplemental jurisdiction).

## II. Potential Jurisdiction over an Interpleader Action

■ Appellants first contend that the district court erred in deciding that jurisdiction under the interpleader statute, 28 U.S.C. § 1335, was improper. To obtain jurisdiction under the interpleader statute, two of the interpleader defendants must be of different citizenship and the stake at issue must be worth at least $500. *See* 28 U.S.C. § 1335(a). As it is undisputed that CSC possessed only the physical CD, which had no value when CSC brought suit, statutory interpleader did not provide a basis for jurisdiction over this action.[5]

■ Appellants also rely on their rule interpleader claim, based upon Fed.R.Civ.P. 22. Rule 22 allows a stakeholder to interplead multiple defendants "when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed.R.Civ.P. 22(1). As appellants recognize, rule interpleader does not provide an independent basis for jurisdiction; in this case, jurisdiction could only be premised on the diversity statute, 28 U.S.C. § 1332. *See Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir.2000). This requires that the plaintiff, CSC, be of diverse citizenship to all defendants, and that the amount in controversy be greater than $75,000. Again, because CSC owned

nothing of value to be interpleaded relating to defendants' claims, CSC's claim based upon rule interpleader cannot provide the basis for diversity jurisdiction.

We therefore agree with the district court's conclusion that neither a statutory interpleader action under § 1335 nor a rule interpleader action based upon diversity provide jurisdiction over CSC's action.

## III. Potential Jurisdiction over Kelleher's Cross–Claims

■ Waggoner and JVW argue in the alternative that diversity jurisdiction is proper over at least some of the remaining state-law claims, after CSC's dismissal, even if jurisdiction did not exist before CSC's discharge of liability on December 5, 2000. Their argument involves treating Kelleher as a plaintiff, suing Waggoner and First Equity (but not JVW), and then treating JVW as an intervenor. They provide, however, no caselaw to support their contention that the parties should be rearranged, without thought to the plaintiff, CSC. In general, a defendant or third party may only be realigned with the plaintiff if its real interests coincide with those of the plaintiff. *See, e.g., Smith v. Sperling*, 354 U.S. 91, 96, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) (holding that the determinative factors are "the issue of antagonism on the face of the pleadings and . . . the nature of the controversy"). Kelleher plainly does not qualify as a plaintiff under this standard.

■ Waggoner and JVW also argue that the district court had independent jurisdiction over at least some of the cross-claims without realigning parties. Appellants argue that this Court should look

---

**5.** Had CSC retained possession of the proceeds of the CD, the amount in controversy might be measured by the value of the proceeds, rather than the valueless CD itself. As it is undisputed that CSC did not retain the proceeds of the CD (the potential "stake" in an interpleader action), we do not reach this issue.

only to Kelleher's claims in determining whether complete diversity exists, ignoring JVW and Waggoner's cross-claims, which would destroy complete diversity. Even if this Court were to accept this novel argument, however, we must look to all of Kelleher's claims after CSC was discharged, including Kelleher's claims against SSBT, which destroy complete diversity. *See* 28 U.S.C. § 1332 (requiring all of plaintiff's claims to be against defendants of diverse citizenship from plaintiff); 28 U.S.C. § 1367 (denying supplemental jurisdiction over plaintiff's claims that destroy diversity). Thus, the district court correctly found that it could not assert diversity jurisdiction based upon Kelleher's cross-claims alone.

## IV. Potential Jurisdiction over a Declaratory Judgment Action

■ In its order dismissing the action, the district court did not address appellants' argument that CSC's amended complaint alleges, *inter alia*, that jurisdiction is proper in this case under 28 U.S.C. § 1332, the diversity statute.[6] In its amended complaint, filed on August 20, 2001, CSC asserts a declaratory judgment claim pursuant to 28 U.S.C. § 2201 with respect to its potential liability for $10 million to Kelleher.

■ Although CSC's original complaint did not assert a declaratory judgment claim or jurisdiction pursuant to 28 U.S.C. § 1332, if both the assertion of jurisdiction under § 1332 and the declaratory judgment claim relate back to the commencement of the action, the amended complaint cures the jurisdictional defect, assuming

for the moment that the amended complaint satisfies the requirements of § 1332. The assertion of diversity jurisdiction relates back to the commencement of the action when the underlying facts, if properly pled, would have supported jurisdiction at the time the action commenced. *See LeBlanc v. Cleveland,* 248 F.3d 95, 99–100 (2d Cir.2001) (per curiam); *see also Herrick Co. v. SCS Communications, Inc.,* 251 F.3d 315, 329 (2d Cir.2001) ("[A] federal court may simply allow a complaint to be amended to assert those necessary facts and then treat diversity jurisdiction as having existed from the beginning."). Similarly, a new claim relates back to the commencement of the action if "the claim ... arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). Because the district court did not address whether the amended complaint related back to the original complaint and the parties do not focus on this question in this appeal, we leave the issue for the district court to address in the first instance on remand. *See Schonfeld v. Hilliard,* 218 F.3d 164, 184 (2d Cir.2000) (finding remand appropriate where issues on appeal "have been briefed and argued only cursorily").

Assuming arguendo that CSC's amended complaint does relate back to the commencement of the action, the remaining question is whether the amended complaint supports diversity jurisdiction. The district court did not explicitly determine this issue. CSC, a New York and Delaware citizen, is diverse from all defendants

---

**6.** Appellants made this argument in district court in a letter dated July 13, 2001 (requesting leave to amend the complaint to assert diversity jurisdiction), in their sur-reply to SSBT's motion to dismiss, and, apparently, in their opposition to SSBT's motion to dismiss. Because appellants' opposition to SSBT's mo-

tion to dismiss was not docketed, however, it is not a part of the record on appeal and we do not consider it. SSBT had ample opportunity to respond to this argument in its reply and sur-sur-reply. We therefore find that appellants did not waive this argument by failing to raise it below.

(aliens, Floridians and Texans alike). Appellants argue that CSC's declaratory judgment claim satisfies the amount in controversy requirement. As the citizenship of each party is not at issue, the only question is whether the amount in controversy may be measured by Kelleher's demand ($10.6 million) or must be measured by the value of the CD (zero). CSC's declaratory judgment claim, which is based upon Kelleher's demand for $10.6 million, requests the following relief:

> [A] declaration ... that CSC has no liability to Kelleher and that CSC, having acted in accordance with the terms of the CD and/or having deposited the CD with the Clerk of the Court, has no further liability to any party in connection with the CD or its role as custodian of the CD, that it is discharged from liability, and awarding CSC its costs and attorneys' fees.

Appellants focus on CSC's request for a declaration that it owes no liability to Kelleher and argue that the value of the declaratory judgment should be measured by Kelleher's demand. *See Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir.1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation."). Appellee argues that CSC's request is based solely on the CD, and that although "the amount in controversy is measured by the value of the object of the litigation," *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the "object of the litigation" in this case is the CD. Because the district court did not discuss this issue in its order, and the parties' argument to this court on the issue is somewhat cursory, we deem it prudent to allow the district court to address these arguments in the first instance. *See Schonfeld*, 218 F.3d at 184.

The district court dissolved the attachment of SSBT's assets because it believed it lacked jurisdiction over the action at the time the attachment was granted. If the district court determines that jurisdiction over the action was proper under the diversity statute, it should reconsider its ruling with respect to the attachment as well. We therefore vacate the district court's order dissolving the attachment and remand for further proceedings.

## V. Supplemental Jurisdiction and Voluntary Dismissal

The district court also granted CSC's motion for voluntary dismissal under Fed.R.Civ.P. 41(a)(2) and determined that exercising supplemental jurisdiction in this case would be unwise.[7] Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." A district court may allow a plaintiff to dismiss an action "if the defendant will not be prejudiced thereby." *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir.1985). In exercising its discretion with respect to retaining supplemental jurisdiction, the district court balances several factors "including considerations of judicial economy, convenience, and fairness to litigants." *Purgess*, 33 F.3d at 138.

In making these rulings, the district court did not weigh the prejudice that JVW and Waggoner would suffer if they lost their attachment of SSBT's assets. Because of SSBT's bankruptcy, the loss of

---

7. Again, if subject matter jurisdiction is lacking, these determinations carry no weight; the district court should have dismissed the entire action without reaching these issues.

appellants' pre-bankruptcy attachment of SSBT's assets would destroy appellants' preferential claim to a portion of SSBT's bankruptcy estate. Having a preferential claim is not a windfall to appellants; it is simply the structure of the bankruptcy code, which rewards creditors that protect their interests early. Under both Rule 41(a)(2) and § 1367, the district court should consider whether the litigants will be prejudiced by the voluntary dismissal or decision not to exercise supplemental jurisdiction. *See Wakefield,* 769 F.2d at 114; *Purgess,* 33 F.3d at 138 (holding "fairness to litigants" is one factor to consider in determining whether supplemental jurisdiction is appropriate); *see also* Fed. R.Civ.P. 41(a)(2) ("an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."). If the district court determines that subject matter jurisdiction is proper over CSC's amended complaint and relates back to the commencement of the action, the district court should evaluate the extent to which losing the attachment prejudices JVW and Waggoner, and weigh this prejudice in its determination whether CSC's voluntary dismissal and the exercise of supplement jurisdiction are appropriate. We therefore vacate CSC's dismissal and the decision not to exercise supplemental jurisdiction and remand for possible reconsideration of these rulings after the district court addresses the question of subject matter jurisdiction based upon CSC's amended complaint.

## CONCLUSION

For the reasons stated above, we vacate the decision of the district court below and remand for the district court to address appellants' argument that subject matter jurisdiction is proper pursuant to CSC's amended complaint. Based on its conclusion regarding this question, the district court should also, if appropriate, reconsider its rulings with respect to CSC's voluntary dismissal motion, the exercise of supplemental jurisdiction, and the dissolution of the attachment of SSBT's assets. As noted, we also deny as moot appellee's motion to strike a portion of the record on appeal, and appellants' cross-motion to supplement the record on appeal.