668 F.2d 46
 PUERTO RICO MARITIME SHIPPING AUTHORITY, Plaintiff, Appellee,
v.
Robert LEITH and Puerto Rico Line, Inc., Defendants,
Third-Party Plaintiffs, Appellants,
v.
PUERTO RICO MARINE MANAGEMENT, INC., Caribbean Bunkering Co.
and John Doe, Third-Party Defendants, Appellees.
 No. 81-1069.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 14, 1981.
Decided Dec. 15, 1981.
 
 Gerardo A. Carlo, San Juan, P. R., with whom Joseph Chalverus-Bertrand, San Juan, P. R., was on brief, for defendants, third-party plaintiffs, appellants.
 Herbert W. Brown, III, San Juan, P. R., with whom Jimenez & Fuste, San Juan, P. R., was on brief, for plaintiff, appellee.
 Before CAMPBELL, Circuit Judge, VAN DUSEN, Senior Circuit Judge,* BOWNES, Circuit Judge.
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 This is an appeal from a voluntary dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure, granted without prejudice and without the imposition of costs or attorney's fees. We affirm the dismissal as within the discretion of the district court.
 
 I.
 
 2
 On May 27, 1977, Puerto Rico Line, Inc., through its president, Robert Leith, contracted to sell over 3,000 barrels of fuel oil to Puerto Rico Maritime Shipping Authority (PRMSA), through its agent, Puerto Rico Marine Management, Inc. (PRMMI).[1] PRMMI arranged for the Caribbean Bunkering Company, Inc. to pick up the fuel oil from the tanker, SS PISCES, and to deliver it to vessels of PRMSA. Payment of $30,140.90 was made to Puerto Rico Line, Inc. in early July 1977.
 
 
 3
 The defendants, Robert Leith and Puerto Rico Line, Inc., contend that this oil was part of a larger shipment intended for the Puerto Rico Water Resources Authority,[2] but the oil was rejected by that agency because its sulphur content was too high for use in the Water Resources Authority's electric power plants. Nevertheless, the defendants claim that the fuel oil was still suitable for PRMSA's vessels since they were permitted to use fuel oil with a higher sulphur content.
 
 
 4
 The plaintiff, PRMSA, asserts that the fuel oil delivered was in fact fuel oil mixed with water, or "slop," and that the defendants knew the oil was worthless slop when they contracted to sell it.[3]
 
 
 5
 Approximately two years later, on July 24, 1979, PRMSA brought suit in the United States District Court for the District of Puerto Rico to recover $33,606.10 in damages. Jurisdiction was alleged under the court's admiralty jurisdiction, Fed.R.Civ.P. 9(h) and 28 U.S.C. § 1333 (1976).
 
 
 6
 On November 9, 1979, the defendants filed a motion to dismiss based on three grounds, two of which are relevant here. First, the defendants claimed that the plaintiff's complaint failed to allege sufficient facts to give the district court admiralty jurisdiction. Second, the motion alleged that the plaintiff's suit was barred by laches, because the complaint was filed more than two years after the contract was signed and more than one year after the allegedly analogous Puerto Rican statute of limitations had run.[4] On January 2, 1980, the defendants moved for a stay of discovery pending a ruling on their motion to dismiss. The district court denied both motions on June 6, 1980, but stated that the motion to dismiss could be renewed after discovery was completed. Discovery continued, with frequent applications to the court.[5] The defendants' motion to dismiss, based on the same grounds as the motion of November 9, 1979, was renewed on September 17, 1980.
 
 
 7
 On October 31, 1980, the plaintiff filed an Informative Motion and Motion Requesting Dismissal Without Prejudice. This motion stated:
 
 
 8
 "2. Plaintiff, after carefully analyzing the facts as they have come up through discovery in the last few months, is of the opinion that this Honorable Court may lack admiralty jurisdiction in this case and, therefore, requests that this action be dismissed without prejudice.
 
 
 9
 "7. For information pruposes (sic), plaintiff will continue to pursue this case in the local courts until justice is finally done."
 
 
 10
 The defendants responded on November 12, 1980, with a motion requesting 20 days to oppose the plaintiff's motion.[6] The defendants asserted in this November 12 motion that the court did have admiralty jurisdiction over this suit.[7]
 
 
 11
 Therefore, in December 1980, two different motions to dismiss were pending before the district court. One was the defendants' motion to dismiss for lack of jurisdiction and laches, although the defendants apparently were no longer pressing the jurisdictional claim. The second was the plaintiff's motion for a voluntary dismissal because of a possible lack of subject matter jurisdiction. On December 18, 1980, the district court chose to grant plaintiff's motion for a voluntary dismissal pursuant to Rule 41(a)(2).
 
 
 12
 The defendants appeal this order of dismissal on three grounds. First, they contend that the district judge abused his discretion in dismissing the case without prejudice.[8] Second, the district judge allegedly abused his discretion by not imposing costs and attorney's fees on the plaintiff. Finally, the defendants argue that a hearing should have been held before the judge dismissed the suit without prejudice.
 
 II.
 
 13
 Rule 41(a) of the Federal Rules of Civil Procedure provides for voluntary dismissals. Rule 41(a)(1) permits a voluntary dismissal by the plaintiff either before an answer or a summary judgment motion is served or on the stipulation of all parties. Since the plaintiff's motion here was filed in the late stages of discovery, paragraph (2) applies:
 
 
 14
 "(2) By Order of Court. Except as provided in paragraph (2) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."
 
 
 15
 Fed.R.Civ.P. 41(a)(2). The district court's decision to grant a motion to dismiss under Rule 41(a)(2) is reviewable only for abuse of discretion. Alamance Industries, Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir.), cert. denied, 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961); United States v. Lyman, 125 F.2d 67, 70 (1st Cir. 1942).
 
 
 16
 The defendants claim that the district judge abused his discretion when he dismissed the suit without prejudice under Rule 41(a)(2) instead of dismissing the case with prejudice, as requested in the defendants' motion of November 9, 1979, renewed September 17, 1980. As a preliminary matter, we find no error in the district judge's decision to address the plaintiff's motion instead of the defendants'. Because the defendants were no longer pressing their jurisdictional defense, the defendants' motion primarily involved the defense of laches. This involved both a complicated legal question concerning the choice of the analogous Commonwealth statute of limitations, as well as a factual issue involving the harm caused by the delay to the defendants. Instead of resolving the difficult laches question, the district court appropriately chose to address the plaintiff's motion for a voluntary dismissal. As the Fifth Circuit has stated: "(t)he basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976). Here, because the district court apparently found that the interests of the defendants would not be prejudiced, it acted properly when it "freely permit(ted)" the plaintiff to voluntarily dismiss. We conclude that the district court did not err in addressing the plaintiff's motion under Rule 41(a)(2) without regard to the defendants' pending motion to dismiss.[9]
 
 
 17
 We also hold that the district judge did not abuse his discretion in dismissing the suit without prejudice under Rule 41(a)(2). Dismissal without prejudice should be permitted under the rule unless the court finds that the defendant will suffer legal prejudice. Neither the prospect of a second suit nor a technical advantage to the plaintiff should bar the dismissal. See Hoffmann v. Alside, Inc., 596 F.2d 822, 823 (8th Cir. 1979); LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976); In re International Airport Inn Partnership, 517 F.2d 510, 512 (9th Cir. 1975); Stern v. Barnett, 452 F.2d 211, 213 (7th Cir. 1971); 9 Wright & Miller, Federal Practice and Procedure § 2363, at 165 (1971).
 
 
 18
 The defendants imply that the plaintiff's suit was brought and prosecuted to harass the defendants because they are competitors of the plaintiff. Yet the record indicates ample grounds on which the district court could conclude that the plaintiff has acted in good faith,[10] regardless of the eventual resolution of the controversy. The defendants also object to the lengthy and costly discovery involved in this suit. But this discovery has not been wasted, as much of it remains relevant to the suit currently pending in a court of the Commonwealth of Puerto Rico.[11] Furthermore, the defendants have not alleged that they will be precluded from raising any defenses, or asserting any claims, in the Commonwealth court.[12] Therefore, because the record does not require a finding of legal prejudice to the defendants, we conclude that the district court did not abuse its discretion in granting the plaintiff's motion for a voluntary dismissal without prejudice.
 
 III.
 
 19
 The defendants argue that the district judge abused his discretion in granting the voluntary dismissal without imposing costs and attorney's fees on the plaintiff. While voluntary dismissals are often conditioned on the payment of the defendant's costs, we hold that the district judge did not abuse his discretion in dismissing this case without imposing any terms or conditions.
 
 
 20
 In Cone v. West Virginia Paper Co., 330 U.S. 212, 217, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947), the Supreme Court noted that "(t)raditionally, a plaintiff ... has had an unqualified right, upon payment of costs, to take a nonsuit in order to file a new action after further preparation, unless the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit" (emphasis added). The Court noted that while the Federal Rules of Civil Procedure now restrict the plaintiff's formerly unlimited right to dismiss without prejudice, "Rule 41(a)(2) still permits a trial court to grant a dismissal without prejudice 'upon such terms and conditions as the court deems proper.' " Id.
 
 
 21
 We do not read Rule 41(a)(2) as always requiring the imposition of costs as a condition to a voluntary dismissal, although it is usually considered necessary for the protection of the defendant. See 5 Moore's Federal Practice P 41.06 & n.2, at 41-83 to 41-84 (3d ed. 1981). The decision of whether or not to impose costs on the plaintiff lies within the sound discretion of the district judge, see New York, C. & St. L. R. Co. v. Vardaman, 181 F.2d 769, 771 (8th Cir. 1950), as does the decision of whether to impose attorney's fees, see Bready v. Geist, 85 F.R.D. 36, 36 (E.D.Pa.1979); Blackburn v. City of Columbus, Ohio, 60 F.R.D. 197, 198 (S.D. Ohio 1973); Eaddy v. Little, 234 F.Supp. 377, 380 (E.D.S.C.1964); Lunn v. United Aircraft Corp., 26 F.R.D. 12, 19 (D.Del.1960).
 
 
 22
 This litigation has provoked what appears to be considerable hostility among the parties, and both the plaintiff and the defendants have accused the other of improper behavior.[13] Given these mutual allegations of abuse of the discovery process, we hesitate to second-guess the district judge's determination that each party should bear its own costs. Therefore, we find no abuse of discretion in the court's failure to impose any terms or conditions when it granted the plaintiff's motion for voluntary dismissal.
 
 IV.
 
 23
 Finally, the defendants argue that the district court should have held a hearing to decide if they were prejudiced by the dismissal. See Cass v. Pacific Fire Ins. Co., 7 F.R.D. 348 (W.D.Mo.1947); see also Diamond v. United States, 267 F.2d 23 (5th Cir.), cert. denied, 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75 (1959). Once again, we find no error in this decision of the district judge.
 
 
 24
 A district judge does not abuse his discretion in granting a motion to dismiss without first holding a hearing if he is familiar with the relevant issues, Chase v. Ware, 41 F.R.D. 521 (N.D.Okla.1967), and if the defendants have adequate notice and opportunity to be heard on the plaintiff's motion to dismiss. Johnston v. Cartwright, 355 F.2d 32, 39-40 (8th Cir. 1966). See also In re International Airport Inn Partnership, 517 F.2d 510, 512 (9th Cir. 1975). Here, the plaintiff's motion to dismiss was filed on October 31, 1980, and the district judge did not rule on the motion until December 18, 1980. The defendants were given notice of the motion, but instead of filing a motion in opposition they filed a motion requesting 20 days to oppose the plaintiff's motion. Although the judge apparently did not rule on this latter motion, he did not grant plaintiff's motion within the 20-day period requested. The defendants did not request a hearing on the question of prejudice until December 29, 1980, when they filed their Motion of Reconsideration and Motion For Hearing on Dismissal. This appeal was filed before the district court reached a decision on this last motion.
 
 
 25
 We conclude that the defendants were given sufficient opportunity to object to the plaintiff's motion to dismiss, and that the district judge did not abuse his discretion in granting the dismissal without prejudice on the basis of the motions filed by both parties following the plaintiff's motion to dismiss.
 
 
 26
 For the foregoing reasons, we affirm the judgment of the district court dismissing this action without prejudice.
 
 
 
 *
 Of the Third Circuit, sitting by designation
 
 
 [1]
 PRMSA is a public corporation wholly owned by the government of Puerto Rico. PRMMI was organized as its wholly-owned subsidiary to operate the vessels owned by PRMSA
 
 
 [2]
 The Puerto Rico Water Resources Authority, now the Puerto Rico Electric Power Authority, is the government agency responsible for producing electric power in Puerto Rico
 
 
 [3]
 PRMSA further asserts that when Caribbean Bunkering Company, Inc. delivered part of the oil to one of PRMSA's vessels, it was rejected by the chief engineer, and when the oil was used by another vessel its burning caused damage to the vessel's electrical plant
 
 
 [4]
 The third ground for dismissing the complaint against defendant Robert Leith was that the question of whether he was properly included as a party depended on whether the court should pierce the corporate veil of Puerto Rico Lines, Inc. The defendants argue that this issue was independent of the alleged admiralty claim and, therefore, could not fall within the court's admiralty jurisdiction. This argument was not made on appeal
 
 
 [5]
 See, e.g., motions of June 13, 20, and 24, July 1, 11, 21, and 24, August 25, and September 3, 1980
 
 
 [6]
 The district court apparently never ruled on the defendants' motion, although 20 days passed before the court ruled on the plaintiff's motion to dismiss
 
 
 [7]
 The defendants argue that the complaint, as originally filed, failed to allege that the cause of action was related to maritime transportation. Defendants' Memorandum of Law to support Defendants' Motion to Dismiss the Complaint, November 9, 1979. The plaintiff allegedly cured this defect in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint on December 10, 1979. In this sworn memorandum of law, the plaintiff stated:
 "In this case, Plaintiff, a corporation which engages in the interstate transportation of cargo, purchased Bunker C oil from the defendants. Said Bunker C oil was ultimately delivered to two of Plaintiff's vessels, the S.S. Bayamon and the S.S. Humacao, where they were found to be contaminated with water and not of the specifications required by Plaintiff.
 "There is little doubt that the transaction here described concerns a maritime service or a maritime transaction having a definite maritime flavor. Bunker C oil may at times be used on land-based electrical power plants, as alleged by defendants in their Memorandum of Law. However, it is a well-known fact that Plaintiff engages in maritime transportation and does not own or operate an electrical power plant."
 
 
 [8]
 The district court's order did not indicate whether the dismissal under Rule 41(a)(2) was with or without prejudice. The rule, however, states that the dismissal is without prejudice unless otherwise specified in the order
 
 
 [9]
 Nor do we find error in the district judge's decision to grant the plaintiff's motion to dismiss without first determining whether the court in fact had jurisdiction over the action. As the plaintiff explained to this court, the question of admiralty jurisdiction arose a second time during the late stages of discovery, when the plaintiff learned that the fuel oil in question may have been purchased to supply several vessels of the plaintiff's fleet, as opposed to two specific vessels. See note 7 supra. A few cases imply that a federal court has admiralty jurisdiction over an action involving a fuel contract only when the contract is made to supply a specified vessel. See Garcia v. Warner, Quinlan Co., 9 F.Supp. 1010, 1011 (S.D.N.Y.1934); Steamship Overdale Co. v. Turner, 206 F. 339, 341 (E.D.Pa.1913); 1 Benedict on Admiralty § 187, at 11-32 (1981); see also Kennedy v. H & M Landing, Inc., 529 F.2d 987, 988 (9th Cir. 1976); Gerard Construction, Inc. v. Motor Vessel Virginia, 480 F.Supp. 488, 490 (W.D.Pa.1979). The plaintiff was concerned that if, on further investigation, it appeared that the contract was intended for general use by the plaintiff, the court might decide to dismiss the case for lack of jurisdiction
 The plaintiff moved for a voluntary dismissal to avoid the expense of arguing this uncertain question of admiralty jurisdiction, and instead chose to pursue its claim in the Commonwealth court free of the possibility of a dismissal on jurisdictional grounds. We find nothing erroneous in the district court's decision to allow the plaintiff to pursue its claim in the Puerto Rican courts without first litigating at the district court level the issue of federal court jurisdiction.
 
 
 [10]
 See, e.g., Deposition of Helen D. Bentley, who testified that she referred to the fuel oil as "slop" when she and defendant Leith agreed that Leith would sell the oil; Deposition of Fernando Ramirez, who testified that a survey report of fuel indicated that the SS PISCES had over 3,000 barrels of slop in its tanks on the afternoon of the delivery to the Caribbean Bunkering Company
 
 
 [11]
 Under Rule 23.4 of the Rules of Civil Procedure for the General Court of Justice of Puerto Rico, 32 L.P.R.A., App. II (1969), the depositions taken for use in the federal court litigation may be used in the suit in the Commonwealth court. This rule provides:
 "Substitution of parties does not affect the right to use depositions previously taken; and, when an action in the General Court of Justice or in a court of the United States or any of its states, territories, or possessions has been dismissed and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor."
 
 
 [12]
 The defendants' argument that this suit is barred in the federal court by laches is based on the theory that this suit would be barred in the local courts under the analogous Commonwealth statute of limitations. The substance of this defense is the same in either court
 
 
 [13]
 See Defendants' Supplement to their Motion to Dismiss, September 17, 1980; Plaintiff's Informative Motion and Motion Requesting Dismissal Without Prejudice, October 31, 1980