**Mark A. HOLBROOK and Mary E. Holbrook, Individually and as Mother and Next Friend of Daniel M. Holbrook, Plaintiffs,**

v.

**ANDERSEN CORPORATION, Defendant.**

**Civ. No. 89–0161–P.**

United States District Court,
D. Maine.

April 26, 1990.

Martha Gaythwaite, Laurence H. Leavitt, Friedman & Babcock, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS ACTION

GENE CARTER, Chief Judge.

### I. *Procedural Background*

This matter is before the Court on Plaintiffs' motion to voluntarily dismiss Plaintiffs' complaint herein, which motion was filed on March 19, 1990 (Docket No. 25). The issues generated by the motion have been fully briefed, and the Court now decides the issues on the written submissions of the parties.

This action was commenced in this Court by Plaintiffs on June 21, 1989 by the filing of a complaint and jury demand. Jurisdiction is based upon diversity of citizenship between Plaintiffs and Defendant. The complaint sets forth liability claims of the minor Plaintiff and his parents arising out of the events of July 16, 1988 in which the minor Plaintiff, Daniel M. Holbrook, then two and one-half years of age, allegedly sustained serious personal injuries, principally head and brain injuries, as a result of falling through a second-story window containing a screen manufactured by Defendant Andersen Corporation. The complaint alleges that, the bottom sash of the window being open, the screen was inadequate to retain the minor Plaintiff inside the building when he fell against the screen. The complaint alleges that the screen was, therefore, defective due to its inadequate retaining capabilities and the absence of warnings regarding the risk of children falling through the screen.

Defendant filed its answer (Docket No. 2) on September 18, 1989, also demanding jury trial and denying liability. On September 24, 1989, the Court entered herein its Scheduling Order (Docket No. 3). That Scheduling Order set a deadline of November 17, 1989 for the joinder of other parties and required that Plaintiffs designate expert witnesses by February 9, 1990, that

James Campbell, Brian P. Voke, Campbell and Associates, Boston, Mass., for plaintiffs.

Defendant do so by March 2, 1990, and that all discovery herein be completed by March 30, 1990. The order further required that all pretrial motions, with supporting memoranda, be filed on or before April 10, 1990. The order further required Plaintiffs to make a written settlement demand upon Defendant by December 22, 1989, and that Defendant respond thereto by January 19, 1990. The order specifically stated "the matter shall be ready for trial as soon after April 10, 1990 as the Court's calendar permits."[1] On January 23, 1990, the Clerk mailed to counsel its Jury Trial List on which this case was listed as the nineteenth case for trial. It is now the tenth case on the list due to the settlement of other cases. A copy of the cover sheet to that list is attached hereto as "Exhibit A." Nothing had happened on the docket of the Court prior to issuance of the Jury Trial List since the entry of the Scheduling Order. On February 16, 1990, Plaintiffs filed a motion challenging Defendant's conduct in a discovery matter (Docket No. 4).

An extensive motion practice ensued on the docket from February 16 through March 14, 1990, when Plaintiffs filed a Motion for Partial Relief from the Court's Scheduling Order. An expedited hearing was held on that motion by the United States Magistrate, who, after a full consideration of the written submissions thereon, denied the motion for reasons stated upon the record. *See* endorsement on Plaintiffs' Motion for Partial Relief from Court's Scheduling Order at 4. That endorsement was dated March 15, 1990.

On the same date, the Magistrate entered a Procedural Order (Docket No. 22) indicating that Plaintiffs had expressed to him an intention to file a motion seeking voluntary dismissal of the action and, in consequence thereof, ordering that Plaintiffs file such motion on or before March 19, 1990 and that Defendant respond thereto on or before March 22, 1990 with a reply, if any, to be made by Plaintiffs on or

before March 23, 1990. The filing of those papers thereafter took place, together with numerous other motions and responses thereto having to do with ongoing discovery.

By the motion to dismiss, Plaintiffs seek to have this matter, which has been on this Court's docket since June 21, 1989, dismissed in order that Plaintiffs may proceed with an action against this Defendant filed on or about March 19, 1990 in the Maine Superior Court asserting the same cause of action against Defendant Andersen as is asserted herein and naming three other companies, Nichols–Homeshield, Inc., Brockway Smith Co., and Washburn Lumber, Inc., as codefendants. One of these defendants, Washburn Lumber, Inc., is alleged without any dispute to be domiciled in the State of Maine, the same domicile as Plaintiffs, and Plaintiffs assert that joinder of that defendant herein would, therefore, destroy diversity jurisdiction in this matter.

The reasons put forth by Plaintiffs as justification for the dismissal in order to pursue the state court action are the following: (1) the action is a product liability action involving Maine substantive law and is properly brought in the state courts, Memorandum in Support of Plaintiffs' Motion for Voluntary Dismissal Without Prejudice at 5; (2) the present action "is a relatively new case initiated less than ten months ago" in which "[l]ittle discovery or meaningful trial preparation has of yet been completed," *id.*; (3) the continuance of proceedings in the pending case would result in a waste of judicial resources by requiring separate lawsuits in two courts based upon the same operative facts to proceed in a parallel fashion. *Id.* at 5–6.

Defendant responds to the motion to dismiss, asserting: (1) that the desire to dismiss in order to pursue the other action is a "transparent" effort of Plaintiffs' counsel to avoid being forced to trial on the Court's May 14, 1990 Jury Trial List while under

---

1. The order also provides in its final paragraph as follows: "Counsel are hereby advised that absent some excusable circumstance, discovery initiatives must be initiated sufficiently in advance of the discovery deadline to permit the opposing party to file *in advance of the discovery deadline* its appropriate response within the period allowed by the Civil Rules for such purpose." Scheduling Order (Docket No. 3) at 2 (emphasis in original).

the disabilities resulting from the failure of Plaintiffs' counsel to obey the scheduling strictures imposed in this case by the Court and to complete necessary discovery within the time provided under those strictures, Memorandum of Defendant in Opposition to Plaintiffs' Motion for Voluntary Dismissal Without Prejudice at 3–6; (2) that the new defendant Washburn is neither a necessary nor indispensable party, *id.* at 6; (3) that there is no occasion to dismiss the case in order to pursue a claim against Washburn, Inc. as a defendant because that defendant is the only nondiverse defendant and is in bankruptcy, *id.* at 12–13; (4) that Defendant will sustain severe prejudice if the case is dismissed without prejudice, *id.* at 13–16; and (5) that if a dismissal without prejudice is granted, it should be on condition that Plaintiffs reimburse Defendant for all discovery costs and a reasonable attorney's fee incurred by Defendant in this action, *id.* at 16–18.

## II. *Discussion*

■ Because the motion to dismiss here was filed after Defendant had answered the complaint and after the expiration of deadlines for completion of discovery and joinder of additional parties, and within ten days of a scheduled final pretrial conference, the motion is governed by the provisions of Fed.R.Civ.P. 41(a)(2). *Puerto Rico Maritime Shipping Authority v. Leith,* 668 F.2d 46 (1st Cir.1981).[2] The Court's decision as to whether to grant the Motion for Voluntary Dismissal Without Prejudice is committed to the discretion of the Court. *Alamance Industries, Inc. v. Filene's,* 291 F.2d 142, 146 (1st Cir.), *cert. denied,* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961); *United States v. Lyman,* 125 F.2d 67, 70 (1st Cir.1942). "The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir.1976) (cited with

approval in *Leith, supra,* at 50). As a noted commentator has observed, however:

While the basic purpose of Rule 41(a)(2) is to allow a plaintiff to dismiss an action without prejudice to future litigation, the dismissal must not unfairly jeopardize the defendant's interests. Accordingly, the dismissal should *in most instances* be granted, unless the result would be to legally harm the defendant.

5 J. Moore, J. Lucas, and J. Wicker, *Federal Practice* ¶ 41.05[1], at 41–53 (2d ed. 1988) (emphasis added); *see also Cone v. West Virginia Pulp & Paper Company,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947).

■ There are numerous instances in which the district courts have refused to grant a voluntary dismissal without prejudice or have granted the motion only with prejudice or upon specified conditions, even though the rule is of broad purpose to permit dismissal without prejudice. *See* 5 J. Moore, J. Lucas, and J. Wicker, *supra* ¶ 41.05[1], at 41–53 through 41–57 (collecting cases). It has been observed that some of the factors which justify a denial of such a motion are the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that the motion is made at a critical juncture in the ongoing processing of the case. *Case v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir. 1969). The Court of Appeals for the Tenth Circuit has also upheld denial of such a motion in circumstances very similar to those that exist here. The court stated:

This action had been pending for some six months at the time of the hearing on the plaintiff's motion to dismiss, depositions had been taken, the defendant had made arrangements for medical testimony, and a pre-trial conference had been held. The case had not been set down for trial, but apparently was ready for

---

**2.** Fed.R.Civ.P. 41(a)(2) reads as follows:
(2) By Order of Court. Except as provided in paragraph (2) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court

and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

trial at the next jury term. Requiring the plaintiff to proceed under these circumstances in the court in which he had filed his action could hardly be termed arbitrary. Certainly, no reason prejudicial to his substantive rights was suggested for dismissal and the trial court did not abuse its discretion in denying the motion.

*Shaffer v. Evans,* 263 F.2d 134, 135 (10th Cir.1958).

There are any number of reasons why this case should not be permitted to be abandoned by Plaintiffs at this point in deference to Plaintiffs' desire to pursue their newly commenced state action. The Court will set forth some of them.

■ First, the joinder of the only nondiverse defendant named in the state action, Washburn Lumber, Inc., is highly unlikely to improve Plaintiffs' chances of obtaining a judgment, or effecting recovery on any that may be obtained, over those chances as they exist in the present action. No contention is made that Andersen is, or is likely to be, unable to respond by payment of any judgment entered against it. Indeed, the prospect of recovery against Washburn Lumber seems remote, in any event, since it is now in involuntary bankruptcy proceedings.[3] The prospects of effecting a recovery on any judgment against Defendant herein seem far superior to those in respect to Washburn if one were to be recovered in the state court action.

Moreover, it appears that in this products liability case, Washburn is a seller in a vertical distribution chain who is below Andersen in that chain. It is asserted, without dispute, that Andersen is the designer, manufacturer, and initial seller of the screen in question. Thus any liability imposed on Washburn would likely be derivative from that of Andersen and would be passed back up the distribution chain to Andersen in any event.

Thus, in view of Washburn's presently bankrupt status and the fact that any liability on its part is likely to be derivative of liability on Andersen's part, no practical or strategic benefit is likely to be secured to Plaintiffs by making Washburn a defendant in the state action or, for that matter, in the presently pending action, if it were possible to do so.

Second, if Plaintiffs had diligently pursued discovery in a timely manner as prescribed by the Court's Scheduling Order of September 24, 1989, they would have been in a position to have moved in a timely manner to join herein the two defendants named in the state court action other than Washburn and as to whom diversity jurisdiction exists. In such an event, the development of this case, with these defendants as parties herein, could have been ongoing, perhaps with justified, controlled extensions of some of the deadlines set out in the Scheduling Order, without any undue delay or risk of loss to Defendant of the benefit of discovery herein and other defense efforts already completed in this action. However, even after discovery of the potential involvement of these defendants in the case, Plaintiffs have never made any request that they be joined herein.

Plaintiffs contend that these defendants were not discovered to be involved in the case until after the deadline to join additional parties had already passed. It is clear to the Court, however, that this circumstance is due wholly to the lack of diligence of Plaintiffs' counsel in discovering the case in a timely manner. Defendant represents in briefing, and Plaintiffs have not disputed the fact, that Plaintiffs served their first set of requests for production of documents and tangible things on December 29, 1989, and served their first set of interrogatories on January 11, 1989. Defendant's Memorandum in Opposition at 2. These actions apparently were Plaintiffs' first discovery initiatives in spite

---

**3.** Defendant's counsel represents in briefing that Washburn Lumber is in bankruptcy, *see* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Voluntary Dismissal Without Prejudice at 12–13, and the representation is not disputed. Further, the bankruptcy proceeding

is pending here in the District of Maine and the Court may properly take judicial notice of the docket in its own adjunct court. The involuntary petition against Washburn Lumber, Inc. is pending as Case No. 89–20475, filed on September 29, 1989.

of the clear dictates of the Court's Scheduling Order herein. *Supra* at 2–3. The deadline to join additional parties had passed nearly six and eight weeks, respectively, prior to those initiatives. It is therefore little wonder that Plaintiffs failed to discover Nichols–Homeshield and Brockway Smith Company as potential additional defendants in time to join them in a timely manner under the Scheduling Order of September 24, 1989. Further, the Court finds it significant that even after discovering these potential additional defendants, Plaintiffs have never made any attempt to have them joined in this action. Rather, Plaintiffs elected to assert claims against them in a new state court action and rest on that strategy.

Once one recognizes that there is little purpose to be served by suing Washburn Lumber, Inc., there is even less purpose to be served by asserting claims against the other two additional defendants *in a separate forum*, except as a make-weight in an attempt to evade, for tactical purposes, the jurisdiction of this Court, which was, after all, originally invoked by Plaintiffs.

Thus the Court is fully satisfied that Plaintiffs' asserted reasons for pursuing the state action all result in the first instance from Plaintiffs' excessive delay and lack of diligence in prosecuting their action through its discovery phases. *See Case v. Southern Express Co.*, 409 F.2d at 334. There is no sufficient explanation put forth by Plaintiffs for this delay and lack of diligence.[4] *Id.*

But more importantly, it clearly appears to the Court that none of the defendants named in the state court case who are not defendants here are necessary or indispensable parties in this case. It is undisputed here that Defendant Andersen is the original designer, the manufacturer, and the initial seller in the chain of distribution of the window screen in question. Therefore, Defendant can obtain adjudication in this action of any claim for negligence or any claim which arises out of any theory of breach of warranty or strict liability because of defective design, manufacture, distribution, or failure to warn with respect to the product against the present Defendant as the originator of the product and the party ultimately liable on all but some potential failure-to-warn claims. The liability of the other defendants (those named in the state court action), who are represented to be intermediate sellers of the screen, below Defendant Andersen in the chain of distribution, is likely to be derivative from the liability, if any, of Andersen. To the extent that any of their acts or failures to act individually may impose liability on them separate and apart from the derivative liability they may bear from Andersen's conduct, those issues are entirely separate, apart and free-standing from the products liability of Defendant Andersen and any derivative liability resulting from Andersen's conduct. Those separate claims can be litigated in the state court action without legal prejudice to any party and in a manner that does not significantly diminish judicial efficiency. Thus there appears to be no legitimate benefit to be gained by Plaintiffs in abandoning this action in favor of the state action.[5]

---

4. Plaintiffs attempt to shift the blame for this delay to Defendant by asserting that it arose from Defendant allegedly stonewalling Plaintiffs' discovery effort. A careful review of the file and of the procedural history of the case by the Court leads the Court to conclude that there is no significant merit to this assertion. Rather, the Court finds that Plaintiffs never timely commenced any serious discovery effort in this case.

Plaintiffs seriously undertook to effectively discover the case only after the Court had given indication that the granting of the Plaintiffs' motion to dismiss would not be any "cinch," as Plaintiffs' counsel apparently believed.

Second, there is no showing the Plaintiffs' counsel attempted to expeditiously and diligently generate any discovery issues that did arise once Plaintiffs' effort did commence before this Court by motion so that they could be speedily adjudicated without unnecessary delay of the action. Finally, the Court does not find any evidence that Defendant has improperly impeded any discovery effort as has been initiated by Plaintiffs and pursued in a diligent manner.

5. Defendant has suggested that one compelling reason not to permit the voluntary dismissal of this action is its assertion that there is a strong likelihood that were that done, the case would ultimately be structured in the state court so that it could be brought back here in any event by the Defendant. A careful researching of the

However, the most compelling reason militating against the voluntary dismissal of this case at this time is the extreme prejudice of a legal and financial nature that would be occasioned to the Defendant in this case by the adoption of that course. Counsel for Defendant represented to the Court in a recent conference, upon inquiry by the Court, in a. discussion of this and other motions, that defense counsel's billable time attributable to the discovery and pretrial preparation effort in this case exceeds $50,000 to $60,000. Those expenditures have been incurred in a discovery environment to which only Plaintiffs and Defendant Andersen are parties.

If this case were to be dismissed and Plaintiffs were to be permitted then to go forward against Defendant Andersen in the state action with the additional defendants, there is a virtual certainty that Defendant Andersen would be required in that action to largely duplicate the discovery commitment that it has made in this action. This is so because of the other defendants named in the state action. They would obviously seek, and would be in a position to insist upon, an opportunity to conduct discovery at which they could be afforded an opportunity to be present and to participate. The conducting of such discovery would require the presence of Defendant Andersen's counsel and this Court is virtually certain that most, if not all, of such discovery would be duplicative of what Defendant Andersen has already been through in the present case.

Thus, this Court concludes that to permit this matter to be voluntarily dismissed at this point would cause extreme prejudice to Defendant Andersen. On inquiry by the Court in conference, Plaintiffs' counsel indicated, and has advised the Court by Plaintiffs' counsel's letter of April 2, 1990, that "[t]he plaintiffs do not want the Court to allow the motion with an award of attorney's fees and costs." That being the case, the interests of justice, judicial efficiency, economy of resources, and simple fairness require that Plaintiffs' motion to voluntar-

legal rules that would govern in the event of such an attempt satisfies this Court that a revivification of the case in this Court, were it to be

ily dismiss this case, without prejudice, be denied.

Accordingly, Plaintiffs' Motion to Voluntarily Dismiss Without Prejudice herein is hereby DENIED. This matter shall proceed as now scheduled.

So ORDERED.

voluntarily dismissed on this motion, is unlikely.