USCA1 Opinion

 

 March 29, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1923 No. 95-2016 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. ALL FUNDS, MONIES, SECURITIES, MUTUAL FUND SHARES AND STOCKS HELD IN FIDELITY INVESTMENTS, ET AL., Defendant, Appellee.  __________ THOMAS E. KNEELAND, JR., Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ Thomas E. Kneeland, Jr. on brief pro se. _______________________ Donald K. Stern, United States Attorney, and Patrick M. Hamilton, _______________ ___________________ Assistant United States Attorney, on brief for appellee, United States of America. ____________________ ____________________ Per Curiam. These consolidated appeals have their ___________ origin in a civil forfeiture action which was dismissed without prejudice, on the government's motion, pursuant to Fed. R. Civ. P. 41(a)(2). Claimant Thomas Kneeland challenges the dismissal; the denial of various pre-dismissal motions, including his requests for an adversarial hearing or entry of judgment in his favor; and the denial of various post-dismissal motions, including a renewed motion for summary judgment, a motion for return of property, a motion to disqualify the district judge, and a motion for judgment on the pleadings.1 For the following reasons, we affirm. 1 Kneeland allegedly operated an advance fee scheme whereby he fraudulently promised potential borrowers that he could obtain funding for their projects, accepted substantial up-front fees, failed to arrange financing or to return the fees, and subsequently "laundered" the fees. On December 2, 1993, the government received ex parte warrants authorizing __ _____ seizure of the defendant properties after persuading a United States Magistrate Judge that there was probable cause to  ____________________ 1The parties dispute the scope of our jurisdiction. 1 Kneeland claims to have appealed eight separate orders by way of eight notices of appeal, whereas the government correctly points out that Kneeland filed only two notices of appeal. We need not resolve what issues are properly before us. Assuming without deciding that we have jurisdiction to review each of the challenged orders, we would affirm. See Norton ___ ______ v. Matthews, 427 U.S. 524, 530-32 (1976) (explaining that ________ jurisdictional inquiry may be bypassed where merits can be easily resolved in favor of the party challenging jurisdiction). believe that they were involved in or traceable to money laundering. Thereafter, the government initiated administrative forfeiture proceedings and Kneeland filed a claim of ownership. On March 30, 1994, a federal grand jury returned an indictment charging Kneeland with conspiracy, mail fraud, wire fraud, money laundering and criminal forfeiture. The forfeiture count specifically identified the defendant properties. On May 6, 1994, the government filed the instant civil complaint for forfeiture pursuant to 18 U.S.C. 981(a)(1)(A).  For a period of time, the civil and criminal cases progressed forward in tandem. The criminal case readied for trial. In the civil case, Kneeland filed an answer to the complaint. Back Bay, Ltd., an alleged victim, filed a late claim. On October 20, 1994, less than three weeks before the criminal trial was scheduled to take place, the government moved to stay discovery in the civil case pending the disposition of the criminal matter. Kneeland did not object to this request, and it was allowed. The criminal trial, however, was delayed, and eventually it was rescheduled to take place on May 22, 1995.  On December 27, 1994, while the stay was in effect, Kneeland filed a motion for summary judgment in his favor on the alleged ground that he was the only person to "perfect a claim" to the defendant properties. The motion was summarily -3- denied. Thereafter, Kneeland moved to lift the stay and renewed his motion for summary judgment. These motions were denied. On April 24, 1995, Kneeland again moved to lift the stay, this time requesting a hearing on the merits of the seizure. This motion was followed by similar motions, filed approximately every two or three days, seeking, inter alia, _____ ____ dismissal of the complaint, an adversarial hearing, or summary judgment. On June 20, 1995, the district court granted Kneeland's motion to lift the stay, but otherwise denied his various motions. By that time, the criminal trial had been delayed once again.  The government immediately filed a motion to dismiss the civil case without prejudice. On or about the same date, the government moved in the criminal case for new warrants freezing the defendant properties. Kneeland filed an "omnibus" motion objecting to the dismissal and seeking entry of judgment in his favor. A week later, he filed a motion for adversarial hearing or entry of judgment. On July 18, 1995, the district court allowed the motion to dismiss and denied the "omnibus" motion. On July 20, 1995, the court denied the motion for adversarial hearing or entry of judgment. Thereafter, Kneeland filed, inter alia, a renewed _____ ____ motion for summary judgment, a motion for return of defendant properties, a motion to vacate the dismissal and to -4- disqualify the district judge under 28 U.S.C. 455(a), and a motion for judgmenton thepleadings. Thesemotions weredenied. A plaintiff's motion for dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) should be allowed unless the court finds that the defendant will suffer plain legal prejudice. 9 Charles A. Wright & Arthur R. Miller, Federal _______ Practice & Procedure 2364, at 280 (2d ed. 1994). The _____________________ decision whether or not to grant such a dismissal is within the sound discretion of the district court and reviewable only for abuse of discretion. See Puerto Rico Maritime ___ _____________________ Shipping Authority v. Leith, 668 F.2d 46, 49 (1st Cir. 1981). __________________ _____ We find no such abuse of discretion here. As an initial matter, we reject Kneeland's suggestion that he was robbed of an imminent victory. See Grover v. Eli ___ ______ ___ Lilly & Co., 33 F.3d 716, 718-19 (6th Cir. 1994) (finding ___________ abuse of discretion where district court dismissed case at the point where the law clearly dictated a result for the defendant). Indeed, Kneeland's argument that he was entitled to judgment in his favor because the government is a mere "escrow agent" for potential claimants is utterly frivolous even if we assume arguendo that Kneeland was the only ________ claimant. The government in a civil forfeiture action under the money laundering statutes is not an escrow agent for others; rather, if successful, it acquires title to the forfeited property. See 18 U.S.C. 981(a),(f).  ___ -5- We also reject Kneeland's argument that he was deprived of his right to an adversarial hearing. Certainly, before forfeiture, a claimant must be afforded an opportunity to rebut the government's showing of probable cause, see United ___ ______ States v. Real Property Known & Numbered as Rural Route 1, ______ __________________________________________________ Box 137-B, Cutler, Ohio, 24 F.3d 845, 848-49 (6th Cir. 1994), _______________________ as well as to present evidence bearing on other potential defenses. However, it doesn't follow that a civil forfeiture action, once begun, may not be aborted. In the instant case, the dismissal obviated the need for a hearing.2 2 Finally, we add that the civil case was still in the pre-discovery stage. Although Kneeland claims to have devoted many hours to the case, the record reveals that much of his efforts were spent on frivolous, repetitious motions. Kneeland had gained no ground in the civil case which he lost by the dismissal. Indeed, Kneeland benefited from not having to litigate two actions simultaneously, and from certain procedural advantages he had in the criminal proceeding. See ___ David B. Smith, Prosecution & Defense of Forfeiture Cases  ___________________________________________ 1.03 (1995) (discussing, by contrast, the tremendous procedural advantages the government enjoys in a civil  ____________________ 2Kneeland's suggestion that he was denied due process 2 because he was not afforded a "timely" post-seizure hearing also fails. Kneeland did not object to the government's motion for a stay; and while the stay was in effect, the government diligently prosecuted the related criminal indictment.  -6- forfeiture action). The criminal case was procedurally advanced and the government ready for trial. Under the circumstances, we think the district court properly allowed the government's motion to dismiss the civil case.  We have carefully considered Kneeland's remaining arguments and reject them as without merit. In particular, we find no error in the denial of his post-dismissal motion for return of property since the assets were then being held in connection with his criminal case.3 We also find no 3 error in the denial of the motion for disqualification. The district court's comments in its order vacating the stay do not warrant an inference that it stepped outside its role to act as adviser to the government, and we find no evidence of bias in any of the court's rulings or in its handling of the case. See Liteky v. United States, 114 S. Ct. 1147, 1157 ___ ______ _____________ (1994) (observing that judicial rulings alone almost never constitute valid basis for a bias or partiality motion). Affirmed. _________  ____________________ 3Contrary to Kneeland's suggestion, there is no evidence 3 that the district court held a "transfer hearing" or was otherwise involved in the decision to issue new seizure warrants. -7-